The opinion of the court was delivered by
Miller, J.
The plaintiff claims payment of ten thousand dollars, the amount of the policy of insurance issued by defendants on the plaintiff’s property, destroyed by fire, the peril insured against. The defence is that plans and specifications required by defendant as *1566 part of the proof of loss were not furnished, that the risks were increased after the insurance without the consent of the insured, and a denial of the damage alleged to have heen caused by the fire.
It is in proof that proofs of loss were furnished, and there were negotiations between the parties in reference to the amount the defendants should pay. The real question was, whether the payment should be an amount sufficient, the defendant claimed, to repair the building insured, and put it in the condition it was before the fire, or whether the value, as in case of total loss, as demanded by the plaintiff, should be the indemnity under the policy. The discussion ended with the denial of liability, except for repairs. In view of this discussion and efforts to adjust the loss resulting in a difference which admittea of no settlement by any papers supplementing the proofs of loss, we think the defence fails that plans and specifications were not furnished. Wood on Fire Insurance, Sec. 414 et seq.
The building, three stories, adapted for stores as well as for dwelling purposes, was partly occupied at the time of the insurance. The uses of the building were indicated by the policy describing it as occupied by stores and dwellings. When the fire occurred there were in the building a barber shop, a shoe-fitting establishment not using machinery, and portions of the premises were devoted to other shop purposes not in our view differing materially from the uses specified in the policy. In our opnion, the risks of fire were not sensibly increased by the kinds of business carried on in the building when the fire occurred, and the circumstance that an additional or increased premium of insurance was demandable, by reason of the nature of the occupancy, not of a dangerous character as it seem3 to us, does not of itself sustain the defence of increased risk. Wood, Secs. 226, 243.
The serious question in this case is as to the amount of the loss. The building was old, and the copious testimony as to its walls, flooring, joists, openings and in other respects, produces the conviction that when insured the building was not sound. It was seriously affected by the fire, both by the flames and falling debris. The party wall was so injured as to be useless; that portion dividing the yards was inclined; the wall opposite the party wall, that is, in the Cusstomhouse side was strained; and there is testimony the cross walls leaned and the joists were charred. Of course, the injuries by the fire were the more serious because of the condition of the premises before requiring, it seems, girders and other appliances to hold it *1567 together, and it is in proof that at the time of the fire necessary repairs were being made. The current of the testimony is the building was old and frail before the fire, one of the witnesses testifying it was unsafe and that it was so injured by the fire as to make it insecure, even with the repairs possible to be made. In this condition the building was condemned by the Oity Engineer, and there was a refusal on the part of the city authorities to permit any repairs. The public safety, in their opinion, required the building should be rebuilt.
In this condition of the record, it is urged on us by the defendant that the building could have been repaired so as to make it as good as before the fire, and the cost of these repairs should be the measure of the recovery. There is a mass of testimony as to the practicability of such repairs, or their efficacy, if made or attempted. There is testimony to the effect the building was injured to such an extent as to be beyond repair. On the other hand, it is testified, on behalf of defendant, that the party wall taken down and rebuilt, anchors introduced connecting the walls, strips of new flooring supplied, with other work on ceilings, cross walls, would put the building in the same condition it was before the fire. The qualification of all this kind of reparation, not to be accomplished without large expense, is that after all, as we gather from the record, the result what would be what the witnesses term a “ fire job,” sufficiently expressive, but made clearer by the testimony of defendant’s witness: that the building, with all the proposed repairs, would still be unsafe.
The police power of municipal corporations, to guard against unsafe buildings by ordering their demolition, will not be questioned. Its exercise may be erroneous and the power may be abused, but still it exists subject to judicial control. But courts should not interfere with it unless on very clear grounds. In this case there is the condemnation of this building by the City Engineer; the action of the Mayor for the enforcement of that condemnation; the prosecution of the owner, the plaintiff, for non-compliance, and finally the refusal of the city authorities to permit attempted repairs of a building deemed a menace to life. The defendants claim all this action of the authorities was illegal, and not to be considered in determining the question of'liability under the policy. Conceding the action was not conclusive, we are remitted to the issue of fact as to the condition of the building, and our conclusion from the record is, that no repairs would have furnished a safe building.
*1568 There is thus presented the question whether the indemnity to the assured for a loss by fire is to be found in the estimated cost of repairs, which, if made, would not give him a secure building, and when, too, the authorities prohibit the repairs. Can the assured be required, under the repairing clause of the policy, or under any view, to accept that species of indemnity? Are not all insurance policies, and their reservations as to repairing buildings injured by fire, subordinated to the public safety, and the police power securing the public against insecure building and dangerous constructions? Irrespective of all considerations of the public safety, is not the assured entitled, under any interpretation of the policy, to some other and better indemnity for a loss by fire than the cost by repairs on the building that can i ot be made safe by any repairs? A total loss may be claimed though the walls of a building stand, and the elements that composed it be not entirely consumed. It is the same, we think, when the insured building can not be made secure by repairs. Nor will it make any difference in such cases of constructive total loss, that the condition after the fire is due, in part, to causes existing before. Such causes are deemed the remote, not the proximate causes of the loss. The insurer taking a risk on an old, and in this instance, an insecure building, incurs the obligation to pay for a total loss if the injuries by the fire, combined with antecedent defects, make repairs impracticable. The value of the old building at the time of the ñre is the measure of the indemnity promised by the ’policy. Recognizing this measure as applicable in this case, we understand it to be not disputed, the lower court has adopted the minimum valuation of the witnesses. Wood on Fire Insurance, Secs. 445, 446; May on Insurance, Sec. 433; 18 South Western Reporter, 337; 54 Cal. 450; 127 Mass. 309; 11 Mich. 446; 19 Wall. 640; Am. Dig. 193, p. 2671, No. 316.
The defendant contends against any liability for injury to the wall between the yard and the adjacent premises. The insurance was on the main and rear buildings. We are not furnished with any authority excluding under such a policy injury to the connecting or yard walls. It would seem that a policy on buildings front and rear should be deemed to include appurtenances as walls. Wood on Fire Insurance, Sec. 474; Workman vs. Insurance Company, 2 La. 507. There is no issue made in the discussion as to the value of the debris of the old building used, as we infer, by the insured, and though *1569 the insured is held for a total loss. We have been called on to deal only with two standards of liability, that of repairs, which we can not adopt, and that of valuation of the insured building, as to which there seems to be no dispute. The insured suggests that there should be, in any event, an allowance for one half of the value of the party wall, not insured. We understand his right against the adjacent proprietor for that half would pass by subrogation. 2 Wood, Sec. 500. Still there is no objection to make the reservation of the right.
It is therefore ordered, adjudged and decreed that, reserving the defendant’s right to claim of the owner of the property adjacent to the premises insured the amount he may owe for the party wall, the judgment of the lower court be affirmed.