(40 South. 718.)

No. 15,619.

MELANCON v. PHŒNIX INS. CO.

(Dec. 18, 1905. On Rehearing, Feb. 26, 1906.)

1. INSURANCE—ACTION ON POLICY—ANSWER.

Defendant, in an amended answer which it filed, "specially denied that plaintiff had suffered any loss or damage in the amount set forth, or in any amount for which it was responsible."

Its adjuster had previously written as follows in one of his letters: "So far as the buildings are concerned, we admit a total loss on them, but we will not be liable for any loss to the building now standing. We give you notice of cancellation which will take effect in five days. We do not think that the damage to the boiler and engine will in any event exceed $150."

Under existing conditions it would be a vain act to throw the litigants back to preliminary proceedings.

2. SAME—EVIDENCE—NONSUIT.

The inventory referred to in the policy was not intended by the parties to be received as "proof" of the facts therein recited on the trial of the merits of the case. It was simply one of the steps contemplated to be taken prior to the institution of a suit. It should not have been admitted as "proof" over defendant's objection. When received, it retained its character of hearsay, and had no effect other than as hearsay and as rem ipsam.

Plaintiff having advanced his claim as an entirety and manifesting no willingness to have it divided by accepting the admissions (pro tanto) of the defendant, the claim is presently nonsuited as a whole without prejudice.

On Rehearing.

3. SAME—VALUED POLICIES—IMMOVABLES.

Section 2, Act No. 135, p. 209, of 1900, is merely complemental of section 1, and, the two sections considered together, the act must be held to relate exclusively to policies of fire insurance covering property which is immovable by nature.

4. SAME—POLICIES—FORM.

Section 22, Act No. 105, p. 151, of 1898, prescribing the use of fire policies conforming to the requirements of the New York standard form of fire insurance policy, is not in conflict with, and hence, is not repealed by, Act No. 135, p. 209, of 1900, in so far as the form of policy prescribed requires the insured to make preliminary proof of loss and to furnish the insurer with information concerning the character, situation, and actual value of the property destroyed or damaged.

5. SAME—PROOF OF LOSS—WAIVER.

Where, after the expiration of 60 days, within which, by the terms of the policy, the

insured is to make his preliminary proofs, etc., the insurer, without qualification and without reservation of the right to replace the same, admits a total loss as to certain property, immovable by nature, and agrees to pay, upon proof being made according to the contract, the loss resulting from the destruction, or partial destruction, of other property covered by the policy, it (the insurer) will be considered as having waived entirely the proof of loss as to such immovable property, and as having waived the time limit, with respect to such proof, as to the other property, and where the items are distinct there may be judgment for the amount admitted, without prejudice to the right of the insured to sue for the balance of his claim on complying, save as to the limit of time, with the conditions of his contract as to proof of loss, etc.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 1378, 1405–1409.]

(Syllabus by the Court.)

Appeal from Nineteenth Judicial District Court, Parish of St. Martin; James Simon, Judge.

Action by Paul Melancon against the Phœnix Insurance Company. Judgment for plaintiff, and defendant appeals. Modified.

Clegg & Quintero and Burke & Burke, for appellant. Martin, Voorhies & Martin, for appellee.

### Statement of the Case.

NICHOLLS, J. The plaintiff prays for judgment against the defendant for the sum of $2,700.

He alleges that on the 10th of January, 1903, the defendant company, through its agents, in the parish of St. Martin, issued to him a policy of insurance, still held and owned by him, against all direct loss by fire, expiring January 19, 1904, for an amount of $2,800, on petitioner's ginhouse and contents situated at Parks Station, St. Martin parish, La., as follows:

"On item No. 1. $500 on steam power two story gin house built of wood with iron roof.

"On item No. 2. $1,400 on fixed and movable machinery of all kinds, excepting engine and boiler and their appurtenances, while set up for use, including gin stands, feeders, condensers, dust and lint flues, cotton presses and appurtenances, suction elevators, fans, vacuum boxes, distributors, pip-

ings and pulleys, seed blowers, seed feeders, shafting, belting hangers, journals, gristmills, tools, pipings and houses in the above gin house.

"On item No. 3. $100 on boiler built of wood and covered with shingles.

"On item No. 4. $500 on engine and boiler including all connections, foundations, pumps, heater and smokestack in the above boiler house.

"On item No. 5. $100 on one story cotton house, built of wood and covered with shingles.

"On item No. 8. $200 on one story seed house, built of wood and covered with shingles."

Petitioner avers that through error or omission of the above-named agents, Fournet & Bienvenu, there is a clause in a form attached to the said policy to the effect that loss, if any, is payable to "Robin & Durio," when it should have read to "Robin & Durio, mortgagees," the said parties, F. C. Robin and A. C. Durio, then holding a vendor's lien and mortgage on the said property; petitioners here averring that the said vendor's lien and mortgage have been duly paid, and Robin & Durio no more having any interest in the aforesaid policy as mortgagees or otherwise.

He further alleges: That during the night of the 7th of January, A. D. 1904, and without any fault of his, his said ginhouse, additions, and contents, above described and enumerated, caught fire and were totally destroyed, with the exception of the cotton house described under item No. 5, insured for $100.

That at the time of their destruction the said gin building, item No. 1 above, had a full value of $800; the machinery and fixtures, item No. 2, a full value of $2,100; the boiler room, item No. 3, a full value of $150; the boiler and engine, item No. 4, damaged to the full extent of $750; the seedhouse, item No. 8, totally destroyed also, had then a full value of $300.

Averring amicable demand in vain, petitioner respectfully prays that the said Phœnix Insurance Company of Brooklyn, N. Y., be cited through its state agent, Fred C. Stockdell, of Orleans parish, La., to appear and answer to this petitioner's demand,

and that after due proceedings had and the hearing of the parties there be a judgment condemning said Phœnix Insurance Company to pay unto petitioner, Paul Melancon, the sum of $2,700, with legal interest, from judicial demand, and all cost of this suit. Petitioner further prays for all general, special, and equitable relief in the premises.

Defendant excepted that the plaintiff had no right of action and no cause of action against it, and, if he had any right whatever against it, the suit thereon was premature, because the policy of insurance declared upon by him and described in his petition was of standard form conformable to the statutes of the state of Louisiana, and, among other things, contained the following stipulations:

"If property covered by this policy is so endangered by fire as to require removal to a place of safety and is so removed, that part of this policy in excess of its proportion of any loss and of the value of property remaining in the original location, shall for the ensuing five days only cover the property so removed in the new location, if removed to more than one location such excess of this policy shall cover therein for such five days in the proportion that the value in any one such new location bears to the value in all such new location; but this company shall not in any case of removal, whether to one or more locations, be liable beyond the proportion that the amount hereby insured shall bear to the total insurance on the whole property at the time of the fire, whether the same cover in new location or not.

"If the fire occur the assured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damage and undamaged personal property, put it in the best possible order, make a complete inventory of the same, statement of the quality and cost of each article and the amount claimed thereon, and within sixty days after the fire unless such time is extended in writing by this company, shall render a statement to this company signed and sworn to by said insured stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property, the cash value of each item thereof, and the amount of loss thereon, all encumbrances thereon, all other insurance whether valid or not covering any of said property and a copy of all the descriptions and schedules in all policy, any changes in the title, use, occupation, location, possession or exposure of said property since the issuing of this policy, by whom and for what purpose herein described, and the several

parts thereof, were occupied at the time of the fire, and shall furnish if required varied plans and specifications of any of the buildings, fixtures or machinery destroyed or damaged, and shall, also, if required, furnish a certificate of the magistrate or notary public not interested in the claim as a creditor or otherwise, not related to the insured, living nearest the place of fire, stating that he has examined the circumstances and believed the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify.

"The insured as often as required shall exhibit to any person designated by this company all that remains of any property herein described and submit to examinations under oath by any person named by this company and subscribe the same, and as often as required shall produce for examination all books of account, bills, invoices and other vouchers and certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representatives and shall permit extracts and copies thereof to be made.

"In the event of disagreement as to the amount of loss the same shall as above provided be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first elect a competent and disinterested umpire. The appraisers together shall then estimate and appraise the loss stating separately sound value and damage, and failing to agree shall submit their differences to the umpire and the award in writing of any two shall determine the amount of such loss. The parties thereto shall pay the appraisers respectively selected by them and shall bear equally the expenses of the appraisal and the umpire.

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to an examination herein provided for and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required by this company, including an award by appraisers when an appraisal has been required.

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured, with all the foregoing requirements, nor unless commenced within twelve months after the fire."

Defendant averred that it had in vain begged of plaintiff compliance with the aforesaid recited stipulations of the policy, and he had neglected and refused to comply with any of the recited conditions of the policy. It specially pleaded the contract of insurance as described in plaintiff's petition and each

and all of the stipulations and warranties thereof. It therefore averred that plaintiff's suit was premature, and that plaintiff was without right of action, and prayed that plaintiff's suit be dismissed.

The exception filed was overruled. Defendant answered, pleading the general issue and praying for judgment in its favor, rejecting the plaintiff's demand, with costs.

Defendant (over plaintiff's objection) was permitted to file an answer for the purpose, as it stated, of setting out most specifically that the plaintiff had failed to comply with any of the terms of the contract of insurance, which was a condition precedent to the filing of any suit.

In this amended answer were set out with particularity the matters and things which defendant complained of. It specially denied that plaintiff had suffered any loss or damage in the amount set forth or in any amount for which it was responsible.

It prayed that the plaintiff's demand be rejected and denied.

The objection urged by plaintiff was that the amended answer changed the issue for the reason that the original answer was a general denial; that the amended answer admitted the issuing of the policy, but set up as defenses that the clauses contained in the policy had not been complied with; and that plaintiff was barred and precluded from bringing this action. These objections were overruled.

On the trial the district court rendered judgment in favor of the plaintiff for $2,700, and the defendant appealed.

### Opinion.

The second exception which was filed by the defendant, to the effect that plaintiff's petition disclosed no right or cause of action, and which was overruled, was a blanket exception, denying compliance by the plaintiff with all of the stipulations which it alleged were made by the terms of the policy conditions precedent to the institution of the suit.

The same complaint was repeated in the answer. In their brief defendant's counsel say:

"There were various allegations of the answer in reference to the failure of petitioner to comply with the terms of his contract, which need not be considered. Others are supported by the evidence, and to these only let attention be drawn. The first is that petitioner failed to make an 'inventory' before or after the fire, stating the 'quantity' and 'cost' of each article and the 'amount' claimed thereon. The provision of the contract requiring this to be done is at line 69. The only attempt at an inventory is that of Gautier & Roy, which bears on its face the lack of compliance with the policy's terms. That he failed to furnish plans and specifications called for by the defendant as to the machinery. It will be recalled that such a demand was made. The policy clause is at line 76, providing that the assured 'shall furnish, if required, verified plans of any building, fixtures, or machinery destroyed or damaged.' In letters to the plaintiff the defendant called on him to take notice that a compliance with all the terms of the policy was required. He was placed on his guard in order heard, and his refusal to comply not only is willful, but it deprives defendant of those means of obtaining a proper estimate of the loss to which he is entitled, under the terms of the policy.

"The plaintiff claims the full amount insured on each item.

"No. 2. Covered all fixed and movable machinery, except the boiler and engine. It was insured for $1,400.

"The item No. 4 covered the engine and boiler insured at $500."

Plaintiff "states that the wreck of the machinery and boiler is worth between $300 and $400.

"The boiler, he states, (exclusive of the steam drum) was not seriously injured. The injury to the steam drum is estimated by him at $50.

"He again estimates the damage to the machinery and boiler, including all connections, pump heaters, and smokestacks, at $1,000. This, of course is a one-sided estimate. He refused to furnish the data upon which the defendant could base its own estimate, and he should not now be heard, but upon his own showing the loss is but partial. Its correct estimate can only be ascertained by conforming to that method of procedure set out by the contractual provisions of the parties to the policy."

Plaintiff, testifying on his own behalf, said:

"The gin was entirely destroyed by said fire, except the cotton house where the cotton was kept, which was the only building we succeeded in saving.

"In my judgment the value of the wreck and machinery and boilers amount to about $300 or $400, more or less, but I must state that I have no experience in so far as to estimating property of that character. The cotton gin in question was not put up by me. I bought it from Robin and Durio already built, except the seed shed and platform."

On the trial the plaintiff offered the following instrument:

"State of Louisiana, Parish of St. Martin.

"Be it known that on this the 14th day of January, 1904, before me, Robert Martin, a notary public, duly qualified in and for the parish of St. Martin and in the presence of the witnesses, personally came and appeared Messrs. L. C. Gauthier and Louis Roy, both well-known residents of St. Martin parish, who at the request of Paul Melancon, owner of the cotton gin destroyed by fire on the 7th instant, at Parker Station, proceeded to the place where the building stood, and which they well knew before it was destroyed, for the purpose of making an inventory, and valuation of what is left of said cotton gin.

"Appearers declare that the cotton-gin building which was fully worth $800, was entirely destroyed by fire, that the machinery and fixtures in said cotton gin, except the boiler and engine, were worth $2,100, and were entirely destroyed or rendered useless by said fire; that the boiler room, which was worth fully $150, was entirely destroyed by said fire; that the boiler and engine have been damaged by said fire to the amount of fully seven hundred dollars.

"Appearers declare that the one story cotton house was not destroyed by said fire, but the cotton seed house which cost $300 was also entirely destroyed by fire. Appearers declare that they have no earthly interest in said burnt property.

Thus done and signed at St. Martinsville this 14th day of January, 1904.

"[Signed] L. C. Gauthier.
"[Signed] Louis Roy.

"Witnesses:
"[Signed]        James J. Martin.
"[Signed]        Paul Melancon.
"[Signed]        R. Martin, Notary Public."

This instrument was objected to on the ground that the document offered as an inventory was not in conformity with the articles of agreement as set out in line 70 of the policy, and further that any other ex parte inventory or appraisement made in any other manner was not binding on the defendant. The objection was referred to the merits. Defendant excepted.

It was admitted by defendant that L. C.

Gauthier and Louis Roy, who were absent on account of sickness, would, if present, swear that they made the said appraisement and inventory, and, if present, would swear that they made the same at the request of plaintiff, to the best of their knowledge and ability. Line 70 of the policy recites that the insured should immediately after the fire make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon.

By the policy of insurance the defendant company, for and in consideration of the sum of $150, insured the plaintiff to an amount not exceeding $2,800, on the following described property, giving the description of the property insured and the amount of insurance on each specific item of the property described.

We are of the opinion that the inventory and appraisement made by Gauthier and Roy should not have been allowed to be introduced on the merits of the case so as to make proof of the facts therein stated. It was not only made ex parte, but it was not made under the solemnity of an oath. As made, it was, in fact, hearsay testimony. Even if it had been introduced without objection, it would still retain its character as "hearsay," and could have no greater weight or effect than such or as "rem ipsam."

We do not think that the plaintiff has made out his case by proper and sufficient evidence. We do not understand defendant to pretend that he is entitled to any judgment in his favor other than one of nonsuit and on the ground of prematurity.

The adjuster for the defendant used the following language in one of his letters:

"So far as the buildings are concerned we admit a total loss on them, but we will not be liable for any loss to the building now standing, and we give you notice of cancellation [italics ours] which will take effect in five days.

"We do not think that the damage to the boiler and engine will in any event exceed $150."

We will render in this case a judgment of nonsuit. When the case is next tried, in our opinion, under the conditions of things disclosed by the record, plaintiff's claim should be tried on its merits. Monteleone v. Insurance Co., 47 La. Ann. 1566, 18 South. 472, 56 L. R. A. 784.

For the reasons herein assigned, it is ordered, adjudged, and decreed that the judgment appealed ·from be, and the same is, hereby annulled, avoided, and reversed, and plaintiff's demand be dismissed as of nonsuit and without prejudice, at his costs.

MONROE, J.

## On Rehearing.

MONROE, J. The plaintiff and his counsel have from the beginning proceeded upon the theory that all fire policies covering property in this state fall under the dominion of Act No. 135, p. 209, of 1900, and hence are valued policies, and that under such policies the insured are dispensed from furnishing the insurer with any information (save, perhaps, that a fire has occurred) and from complying with those provisions of the ordinary, or standard, policy, which are reproduced in the original opinion herein handed down; their position upon the subject being, as we take it, fairly represented by the adjuster employed by the defendant in his letter to plaintiff of February 25, 1904, as follows, to wit:

"On yesterday the writer visited the scene of your ginhouse fire and was exceedingly sorry, to miss you, but, returning to St. Martinsville, and being informed that your claim was in the hands of attorneys Martin & Voorhies, we stated our business and explained to Mr. Martin that we would mail him,. from New Orleans, a form to aid you in making up schedule of your machinery, etc., when he replied that he had two neighbors appraise the loss, and that the company would have to pay all the insurance, to which we replied that an ex parte appraisement, likely made by incompetent friends, would in no wise affect the company's liability, whereupon Mr. Martin replied that, if that was our opinion, it would be useless to send him any form of statement to make out. This ultimatum left us nothing to do but bid the gentlemen good day. Out of abundant frankness, and warning you, and in view of the attitude assumed by your counsel, we deem it fair to state to you that we shall accept and require full compliance by you with every condition of your policy, and we expressly reserve all our rights thereunder, without waiver of any description."

Section 22, Act No. 105, p. 151, of 1898, reads:

"No fire insurance company shall issue fire policies on property in this state other than those which shall conform to the requirements of the New York standard form of fire insurance policy."

Act No. 135, p. 209, of 1900, contains three sections, which (so far as they need be here quoted) read as follows, to wit:

"Section 1. * * * That whenever any policy of insurance is, hereafter, written or renewed on property, immovable by nature and situated in this state, and the said property shall be either partially damaged or totally destroyed, without criminal fault, * * *, the value of the property, as assessed by the insurer, or, as by him permitted to be assessed, at the time of the issuance of the policy, shall be, conclusively, taken to be the true value of property at the time of the issuance of the policy, and at the time of the damage or destruction. Provided, that nothing herein shall be so construed as to prevent the insurer, previous to the damage or destruction of property, from reducing the insurance thereon.

"Sec. 2. * * * That whenever any policy of insurance against loss by fire is, hereafter, written or renewed on property situated in this state, and the said property shall be totally destroyed, without criminal· fault upon the part of the insured or his assigns, the full amount of the insurance on the property so destroyed shall be paid by the insurer, and that, when said property shall be partially damaged, without criminal fault, the insurer shall pay the insured such amount as will permit the insured to restore the damaged property to its original condition. Provided, that nothing herein shall be so construed as to prevent the insurer from replacing the property partially damaged or totally destroyed, at his own expense and without contribution on the part of the insured.

"Sec. 3. * * * That all laws or parts of laws in conflict with this act are hereby repealed."

A careful consideration of the act last above quoted leads us ·to the conclusion that the second section is intended merely as complemental of the first, and that, the two sections taken together, the act relates exclusively to policies covering property immovable by nature; the purpose of the second section being to provide specifically that the insurer

shall pay the amount which, according to the first section, is established by the insurance, subject, however, to the condition that the insurer may, at his option, replace or restore the property.

The third section repeals existing laws, in so far only as they are in conflict with the act, and the statute of 1898 (as quoted) does not conflict with the act in requiring (by prescribing the use of the standard policy) that the insured shall make preliminary proof of loss and shall furnish the insurer with information in regard to the character, situation, and actual value of the property destroyed or damaged, since, conceding that if, in case of the total loss of property which is immovable by nature, the insured shall elect to pay, he must pay the amount stipulated in the policy, such proof and information are necessary for his guidance in determining whether he will pay or replace the property, and, a fortiori, are essential in case of partial loss of such property, and as to property which is not immovable by nature the contract, as represented by the standard policy, is unaffected by the act of 1900.

Primarily, therefore, the plaintiff was bound to comply within 60 days with the conditions of his policy, as recited in the original opinion. From the correspondence which took place between his representatives and the adjustment company (representing the defendant) the latter must, however, be considered as having waived such compliance, within the time limit of 60 days, as to the entire claim, and as having waived it entirely as to the buildings, for upon March 14, 1904 (after the sixty days referred to had expired), the defendants, acting through the adjustment company, wrote to the plaintiff's representatives, in reply to a communication received from them, in part, as follows, to wit:

"We note that neither you or your client desire to go to court, and we assure you that we are perfectly willing to live absolutely up to our contract, in every particular, and we shall cheerfully pay any loss proven in accordance with our contract. We return the affidavits from your client's neighbors, which, as explained to you in person, are worthless.

"In an earnest effort to aid you in complying with the contract, and disclaiming any intention whatever of reflecting upon your ability to take care of your client's interests, we send you proof of loss blank, and call your special attention to lines 76 and 77, and request that you furnish us verified plans and specifications of the machinery damaged or destroyed. So far as the buildings are concerned, we admit a total loss on them, but we will not be liable for any loss to the building now standing, and we give you this notice of cancellation, which will take effect in five days. See lines 51 and 52. We do not think the damage to the boiler and engine will, in any event, exceed $150, and we wish to call your attention to the fact that your client is not protecting the engine as he should. We desire the name, make, and size of both the engine and the boiler.

"You should have no difficulty in procuring, from the gin people from whom your client made his purchase, full details of the machinery installed. Trusting, with this explanation, that we will soon be able to reach a conclusion satisfactory to all around, we are

"Yours very respectfully,
"New Orleans Adjustment Company, Ltd."

As the matter stands, therefore, the defendant, without qualification or reservation of the right to replace the property, admits that the risk on the buildings (except that on the one-story cotton house which the plaintiff admits was saved) resulted in a total loss, and the plaintiff is entitled to a judgment for $800, being the aggregate amount for which those buildings were insured. As to the balance of his claim, whilst asserted under the same contract, it is, as we have seen, predicated upon a contract of which the Act No. 135, p. 209, of 1900, forms no part. Besides which, it is made up of distinct items, and, as it appears to us is so far severable from that portion of the claim which is here adjudicated upon as that, without prejudice to either litigant, it may still be prosecuted when the plaintiff shall have made the preliminary proof as required by his contract.

It is therefore ordered, adjudged, and decreed that in so far as the judgment appealed from condemns the defendant to pay to the plaintiff the sum of $800, as for insurance on the buildings covered by the policy sued on,

the same be now affirmed, and that, in all other respects, said judgment be annulled, avoided, and reversed, and the demand of plaintiff rejected as in case of nonsuit. It is further adjudged and decreed that the costs of the appeal be paid by the plaintiff and those of the district court by the defendant.