765 So.2d 836 (2000)
NORTHBROOK PROPERTY & CASUALTY INSURANCE COMPANY, Appellant,
v.
R & J CRANE SERVICE, INC., Appellee.
No. 4D99-2988.
District Court of Appeal of Florida, Fourth District.
August 16, 2000.
*837 Terrence J. McGuire of Higley & Barfield, P.A., Altamonte Springs, for appellant.
Fred L. Kretschmer, Jr. of Moss, Henderson, Blanton & Lanier, P.A., Vero Beach, for appellee.
WARNER, C.J.
An insurer, Northbrook Property & Casualty Insurance Company, appeals a final summary judgment holding it liable for the replacement cost of a damaged crane. The insurer claims that its policy allowed it the option of repairing the crane. The insured contends that because the Occupational Safety and Health Administration ("OSHA") regulations require that the damaged crane be replaced, the option of repair is precluded. Because we conclude that the insurance contract must be interpreted in light of the existing statutes and regulations surrounding its subject, we hold that where the OSHA regulations precluded repair of the property, the insurer is obligated to replace, rather than repair the damaged crane.
The insured owned a crane and insured it through an insurance policy provided by the insurer. Chords in the boom section of the crane (i.e. the long vertical arm) were damaged by high winds. The policy provided that the insured would be compensated for a covered loss based upon actual cash value and not replacement cost. The insurance policy's "Loss Payment" clause provides, in relevant part, as follows:
1. In the event of loss or damage, at our option up to the policy limit we will either:
a. Pay the value of lost or damaged property;

*838 b. Pay the cost of repairing or replacing the lost or damaged property, plus any reduction in value of repaired items;
c. Take all or any part of the property at an agreed or appraised value; or
d. Repair, rebuild or replace the property with other property of like kind and quality.
The insurer chose, pursuant to option "d.", to repair the damaged portion of the crane instead of replacing it.
OSHA regulations affecting cranes and derricks, as promulgated in 29 C.F.R. § 1926.550(a)(1), provide that:
[t]he employer shall comply with the manufacturer's specifications and limitations applicable to the operation of any and all cranes and derricks. Where manufacturer's specifications are not available, the limitations assigned to the equipment shall be based on the determinations of a qualified engineer competent in this field and such determinations will be appropriately documented and recorded. Attachments used with cranes shall not exceed the capacity, rating, or scope recommended by the manufacturer.
The crane manufacturer informed the insured that the damaged portion of the crane must be replaced, not repaired. Also, an excerpt from the crane's operator's manual states that "[i]f a main chord is bent or damaged, the section must be replaced before making any lifts. Do not try to repair it. Chords are so vital to luffing attachment strength that it is not practical to attempt repairs." (Emphasis in original).
At his deposition, a senior product design manager for the crane manufacturer testified that the pictures of the crane indicated to him that the cords near the boom extension were bent and therefore were not repairable because "the main chords are bent beyond what we would normally allow as stated in our boom repair manual." He went on to state that repairing the boom would be a direct violation of the OSHA guidelines. The insurer filed an affidavit by a mechanical engineer stating that the damaged portion of the crane could be satisfactorily repaired in a manner where it would be recertified pursuant to the OSHA regulations for operation.
The insured moved for summary judgment arguing that this regulation required that the insurer pay for replacement of the damaged parts. The insurer countered that: (1) the OSHA guideline requires the employer, not the insurer to comply with the requirement, and (2) the policy itself excludes recovery in this case because the loss was an indirect or consequential loss, which was an exclusion to coverage under the policy. In regards to this second argument, the insurance policy states that "[w]e will not pay for loss or damage caused by or resulting from any of the following: ... Delay, loss of market, loss of use, interruption of business, or any other indirect or consequential loss of any kind, however caused."
The trial court entered summary judgment in favor of the insured, reasoning that the actual cash value of the loss in this instance is measured by the insurance policy's "Loss Payment" clause requirement that if the insurer chooses to repair the subject property, it must do so:
with the property of a like kind and quality. In this instance, the actual cash value to be paid by the insurance carrier to repair the damaged crane is equivalent to the replacement costs (sic) of the damaged boom section instead of repair of the damaged boom section which cannot be accomplished pursuant to the crane manufacturer's recommendations and OSHA regulations.
On appeal, the insurer challenges the trial court's decision on the same two grounds presented below.
The insurer argues that its policy allowed it to repair the subject boom, rather than replace it, and that the OSHA *839 regulation does not apply to the insurer's contractual obligations to insure the crane and boom. We disagree. Generally,
all existing applicable or relevant and valid statutes, ordinances, regulations, and settled law of the land at the time a contract is made become a part of it and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a contrary intention.
17A Am.Jur.2d Contracts § 381 (1999)(footnote omitted). Florida case law agrees with this proposition. See Gordon v. State, 608 So.2d 800, 802 (Fla.1992); National Merchandise Co. v. United Serv. Auto. Ass'n, 400 So.2d 526, 531 (Fla. 1st DCA 1981). Therefore, the insurance contract must be construed as including the limitations contained in the OSHA regulations as to whether an item of insured equipment can be replaced or repaired.
In other contexts, insurers have been required to replace rather than repair insured property where statutes or ordinances prevent repair, even where the policy gave the option of repair. For example, in Citizens Ins. Co. v. Barnes, 98 Fla. 933, 124 So. 722 (1929), an insured building was damaged by fire. The damage did not cause an actual total loss, but a town ordinance made it unlawful to perform the necessary repairs. The court adopted the general principle construing a contract in harmony with existing statutes:
"[t]he question is a new one in this state, and an examination of the books discloses very few adjudged cases on the subject in other states. We have found only the following: [Hamburg, etc.] Insurance Co. v. Garlington, 66 Tex. 103, 18 S.W. 337, [59 Am. Rep. 613]; Brady v. [Northwestern] Insurance Co., 11 Mich. [425] 445; Brown v. [Royal] Insurance Co. 1 El. & El. 853; [Fire] Association v. Rosenthal, 108 Pa. St. 474, 1 A. 303; Monteleone v. [Royal] Insurance Co., 47 La. Ann. 1563, 18 So. 472 [56 L.R.A. 784]. These authorities lay down the rule that such ordinances are a part of the contract of insurance, and that the insurer is bound thereby. This is in line with the general doctrine that, where parties contract upon a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into their engagements with reference to such statute, and the same enters into and becomes a part of the contract. There would seem to be no logical reason why this general rule should not apply to a case of this kind. The parties are presumed to know of the ordinances. They directly and materially affect their rights in case of a loss under the policy, and should govern and control in the adjustment and settlement of such loss.["]
Id. at 723 (quoting Larkin v. Glens Falls Ins. Co., 80 Minn. 527, 83 N.W. 409, 410 (1900)). The court required the insurer to pay for the total loss of the building. See Citizens Ins. Co., 124 So. at 724.
Similarly, the OSHA regulations governing the crane and boom become part of the contract of insurance. OSHA requires that the employer comply with all of the manufacturer's specifications and limitations applicable to the operation of the crane and boom. The manufacturer of the crane and boom in this case requires that a damaged section of the boom must be replaced, not repaired, before making any lifts, and a senior product design manager for the manufacturer testified that the damage to the boom was beyond what was allowed in the boom repair manual. As OSHA has required that the crane and boom be used in accordance with the manufacturer's directions, the crane cannot be repaired and still comply with the OSHA regulation. Our conclusion is further bolstered by a provision of the regulations not cited to us, but which provides further support for the reliance on the manufacturer as the authority for repair/replacement of the crane and boom: "[n]o modifications or additions which affect *840 the capacity or safe operation of the equipment shall be made by the employer without the manufacturer's written approval." 29 C.F.R. § 1926.550(a)(16)(emphasis added). Here, the manufacturer specifically disapproved any repair based upon its effect on strength for lifting.
The insurer argues that the OSHA regulation applies to the employer and its use of the crane, not the insurer's obligation with respect to the damaged crane. We find this argument without merit. Just as the town ordinance in Citizens Ins. Co. regarding the prohibition of repair was not directed at the insurer of the building, the regulation here is directed at the employer rather than the insurer. If the employer cannot operate the crane without violating safety regulations, then of what use is the repaired crane? In such a state, a repaired crane is not property "of like kind and quality." The court was correct in rejecting the insurer's argument.
We likewise reject the insurer's claim that its exclusionary clause quoted above precludes recovery of the cost of replacement. We distinguish State Farm Fire and Casualty Co. v. Metropolitan Dade County, 639 So.2d 63 (Fla. 3d DCA 1994), on which the insurer relies. In that case the insurance policy had a specific exclusion for losses arising from the enforcement of ordinances or laws regarding building construction. No such exclusion for ordinances or laws is included in this contract. The terms of an insurance policy should be construed in a manner that provides the broadest coverage to the insured. See Demshar v. AAACon Auto Transp., Inc., 337 So.2d 963, 965 (Fla. 1976); St. Paul Fire & Marine Ins. Co. v. Thomas, 273 So.2d 117, 120 (Fla. 4th DCA 1973). The exclusion that precludes coverage for indirect or consequential loss does not apply in this case. Moreover, it cannot be said that the cost of replacement rather than repair due to the OSHA regulation is either indirect or consequential but is a damage directly resulting from the occurrence of the risks insured against.
Affirmed.
GUNTHER and STEVENSON, JJ., concur.