**THREE PALMS POINTE, INC.,
individually and on behalf of
its members, Plaintiff,**

v.

**STATE FARM FIRE AND CASUALTY
COMPANY, Defendant.**

**No. 802CV1169T30TBM.**

United States District Court,
M.D. Florida,
Tampa Division.

March 10, 2003.

William F. Merlin, Jr., Gunn Merlin, P.A., Tampa, FL, for Three Palms Pointe, Inc., individually and on behalf of its members, plaintiff.

Donald Lee Craig, J. Pablo Caceres, Lee Craig, Butler Pappas Weihmuller Katz Craig LLP, Tampa, FL, for State Farm Fire & Casualty Co., defendant.

### ORDER

MOODY, District Judge.

This action seeks a determination of what repair costs are recoverable under an insurance policy. The parties have previously engaged in an appraisal proceeding that determined the amount of the covered loss to be $11,300,000. State Farm Fire and Casualty Company ("State Farm") paid all but $560,000 of this amount, claiming that personal relocation expenses of residents were not recoverable. Three Palms Pointe, Inc. ("Three Palms") brought this action seeking confirmation of the appraisal award and a declaratory judgment that coverage under its policy included personal relocation expenses of residents. Both sides have moved for summary judgment and/or for judgment on the pleadings (Dkts.# 30, 31, 32).

### BACKGROUND

Three Palms is a condominium association. State Farm issued a condominium association policy, policy no. 90–98–8636–3, to Three Palms (the "Policy"). The Policy insured the property located at 420 64th Ave., St. Petersburg Beach, Florida (the "Property") from June 29, 1986 through June 29, 1997. On March 17, 1997, Three Palms submitted a claim to State Farm (the "Claim") for a "collapse" of the Property, a covered loss under the Policy. The parties disagreed on the amount of loss caused by the collapse and what costs were covered under the Policy. On or about February 16, 1999, Three Palms elected to enforce the appraisal provision of the Policy, which provides:

**Appraisal.** If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent impartial appraiser. Each party will notify the other of the selected appraiser's identity within 20 days after receipt of the written demand for an appraisal. If the appraisers cannot agree upon an umpire within 15 days, either may request that a selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Each party will:

a. pay its chosen appraiser; and

b. bear the other expenses of the appraisal and umpire equally.

*See* Policy, § I–Conditions, ¶ 4, at 17.

In addition to the appraisal clause, the Policy contained the following relevant provisions, dealing with what losses and expenses are covered and when payment for the loss is due:

**Losses Insured.** We insure for *accidental direct physical loss to property* covered under this policy unless the loss is:

1. limited in the **PROPERTY SUBJECT TO LIMITATIONS** section; or

2. excluded in the **LOSSES NOT INSURED** section that follows.

*Id.,* § I–Losses Insured and Losses not Insure, at 4 (emphasis added).

1. **Loss Payment.** In the event of loss covered by this policy:

a. we will give notice within 30 days after we receive the sworn state-

ment of loss of our intent to settle the loss according to one of the following methods:

> (2) pay the cost of replacing or repairing the lost or damaged property, plus any reduction in value of repaired items;

*Id.,* § I–Conditions, ¶ 1, at 15.

> e. we will pay for covered loss within 20 days after we receive the sworn statement of loss, if:

> (2) we have reached agreement with you on the amount of loss or an appraisal award has been made.

*Id.,* § I–Conditions, Amendatory Endorsement (Florida).

4. **Collapse.**

> a. We will pay for any *accidental direct physical loss to covered property* involving collapse of a building or any part of a building caused by one or more of the following:

> . . . .

*Id.,* § I–Extensions of Coverage, ¶ 4, at 7 (emphasis added).

The Policy neither defines the term "accidental direct physical loss to covered property" nor does the Policy define what costs are to be included in the "cost of replacing or repairing the lost or damaged property." The Policy fails to exclude coverage for or the costs of personal relocation expenses. The Policy, however, does not contain a "loss of use" or other similar provision that provides explicitly for coverage or payment of personal relocation expenses.

On March 27, 2002, pursuant to the Policy's appraisal provision, the appraisers rendered an "Arbitration/Appraisal Award" (the "Award"). The Award determined the total amount of the loss to be $11,300,000. This Award included $700,000 to relocate the residents' personal property and $560,000 to relocate the residents while the repairs were being made. Both amounts were explicitly found to be "a necessary and direct result of the construction and repair process." The Award did not determine any coverage issues under the Policy or the entitlement of any party to attorneys' fees and costs.

After the Award had been rendered, State Farm paid the entire award except for the relocation expenses of residents.[1] State Farm does not dispute that relocating tenants lowered the repair costs and saved State Farm money. Additionally, the parties agree that the units will be uninhabitable during repairs.

**SUMMARY JUDGMENT STANDARD**[2]

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable

---

1. State Farm did pay for the relocation of personal property of the residents.

2. The standard for granting judgment on the pleadings is similar. Judgment on the pleadings is appropriate when there are no material facts in dispute and judgment may be ren-

dered by looking to the pleadings and any judicially noticed facts. *See Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir.1998). This Court is to accept the facts in the complaint as true and take those facts in the light most favorable to the non-moving party. *See id.*

doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989); *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inferences from the facts, and if that inference introduces a genuine issue of material fact, then the Court should not grant the summary judgment motion. *Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir.1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict from the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## LEGAL ANALYSIS

■ This Court concludes that the Award should be confirmed and that, under the circumstances of this case, personal relocation expenses are recoverable. This conclusion is based on the findings of the appraisal panel, the plain meaning of the policy, and Florida law [3] on appraisal awards and insurance contract interpretation.

### A. Confirmation of the Award

■ This Court concludes that the Award should be confirmed. State Farm is incorrect that the Florida Supreme Court in *Allstate Ins. Co. v. Suarez* did anything to modify existing Florida law on confirmation of appraisal awards. 833 So.2d 762 (Fla.2002). In *Suarez*, an insurer appealed the confirmation of an appraisal award, arguing that the umpire had failed to use the formal procedures contained in Florida's Arbitration Code. *See id.* at 763. The Florida Supreme Court held that the appraisal clause in that case (which is similar to the one in the Policy) was not ambiguous and did not require the formal procedures of Florida's Arbitration Code to reach a binding award. *See id.* at 765. The Florida Supreme Court, however, approved the confirmation of the appraisal award. *See id.* at 766.

*Suarez* is not extraordinary for allowing an insured or insurer to confirm an appraisal award. Numerous Florida District

---

**3.** In this case, this Court's jurisdiction is based upon diversity, 28 U.S.C. § 1332, and this case arises under Florida law. In diversity cases arising under Florida law, a federal court is bound by the law articulated by the Florida Supreme Court. *See Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir.1990). If the Florida Supreme Court has not spoken on an issue, Florida District Court of Appeals decisions control absent persuasive indication that the Florida Supreme Court would rule otherwise. *See Blanchard v. State Farm Mut. Auto. Ins. Co.*, 903 F.2d 1398, 1399 (11th Cir.1990). If there is no authority, this Court is to make an "educated guess" as to how a Florida court would rule. *See Shapiro*, 899 F.2d at 1118–19.

Court of Appeal decisions have affirmed confirmation of appraisal awards utilizing Florida's Arbitration Code's confirmation process. *See, e.g., American Reliance Ins. Co. v. Devecht*, 820 So.2d 378, 379 (Fla. 3d DCA 2002) (citing Florida Statute § 682.13 while confirming an appraisal award); *also Allstate Ins. Co. v. Martinez*, 790 So.2d 1151 (Fla. 3d DCA 2001) (affirming confirmation of appraisal); *Preferred Nat'l Ins. Co. v. Miami Springs Golf Villas, Inc.*, 789 So.2d 1156 (Fla. 3d DCA 2001) (holding same).

While acknowledging some differences between appraisal and arbitration provisions, Florida courts have generally treated appraisal clauses as "narrowly restricted" arbitration provisions. *United States Fidelity & Guaranty Co. v. Romay*, 744 So.2d 467, 469 (Fla. 3d DCA 1999). For example, Florida courts have repeatedly utilized Florida Statutes § 682.03 as a basis to compel appraisals.[4] *See New Amsterdam Cas. Co. v. J.H. Blackshear, Inc.*, 116 Fla. 289, 156 So. 695, 696 (1934); *Romay*, 744 So.2d 467, 469 (Fla. 3d DCA 1999) (listing numerous cases); *Preferred Mut. Ins. Co. v. Martinez*, 643 So.2d 1101, 1102–03 (Fla. 3d DCA 1994) (listing additional cases).

State Farm is correct that one difference between appraisal and arbitration decisions is that an arbitration decision determines the entire dispute and not just the amount of loss. This Court disagrees

with State Farm that this somehow prevents confirmation of an appraisal award or somehow creates an "invalid judgment." Instead, the procedure that Florida courts use (and have seemingly used for more than the last thirty years) is to allow the insured to petition or move for confirmation of an appraisal award. Then, the insurer may assert as an affirmative defense lack of coverage, policy limits, or a violation of policy conditions such as fraud, lack of notice, or failure to cooperate.[5] *See, e.g., Johnson v. Nationwide Mutual Ins. Co.*, 828 So.2d 1021, 1025–26 (Fla. 2002); *State Farm Fire and Casualty Co. v. Licea*, 685 So.2d 1285, 1287–88 (Fla. 1996); *Meade v. Lumbermens Mutual Casualty Co.*, 423 So.2d 908, 910 (Fla.1982) (holding that insured could challenge policy limits after "arbitration" award because issue was not raised to panel); *Gonzalez v. State Farm Fire and Casualty Co.*, 805 So.2d 814, 816–17 (Fla. 3d DCA 2000).[6]

Under this procedure, if the insurer fails to raise an affirmative defense or the insured defeats the defenses raised in a judicial proceeding, then a valid enforceable judgment is entered and the appraisal award is confirmed. If the insurer is successful asserting its affirmative defense, then no judgment is entered. Nothing in this process creates an "invalid judgment" lacking liability.[7] There has been no change in law with *Suarez*, and Florida courts have repeatedly recognized confir-

---

4. If this Court accepted State Farm's argument that *Suarez* signaled a change in Florida law, then appraisal provisions would be optional and rarely used because there would be no statutory bases to compel appraisals.

5. Additionally, the insurer could raise the normal defenses to confirmation of an arbitration award. An insurer could also seek confirmation of an appraisal award.

6. This Court would note that in some cases where coverage of the loss is completely denied by the insurer it may be more practical

for the parties to resolve the coverage dispute first, then stay the action (if the insured is successful and coverage exists) to determine the amount of the loss, and finally confirm the appraisal award.

7. Because this Court concludes that the Award is confirmable, it need not reach the parties arguments on whether the Policy was modified to include an arbitration provision or whether State Farm waived or is otherwise estopped from arguing that an arbitration did not occur.

mation of appraisal awards under the procedure contained in Florida's Arbitration Code.

## B. Personal relocation expenses are recoverable under the Policy.

In anticipation that State Farm would raise a "coverage" defense (which they have), Three Palms sought a declaratory judgment that the Policy covered personal relocation costs. This Court concludes that the Policy allows for recovery of personal relocation expenses, which, as here, are incurred as a direct result of the repair rather than the loss.

The parties in their pleadings, motions, and responses have couched this dispute as one of whether "coverage" exists for personal relocation expenses. State Farm, however, does not dispute that the property's collapse was covered and caused an "accidental direct physical loss" to the Property. Because State Farm concedes that a covered loss occurred, this Court need not determine whether personal relocation expenses are a direct physical loss to the Property. Instead, the issue for this Court is whether personal relocation expenses are a "cost of replacing or repairing the lost or damaged property." Policy § I–Conditions, ¶ 1(a)(2), at 15.

In interpreting language in the Policy, Florida courts treat insurance policies as a contract. See Old Dominion Ins. Co. v. Elysee, Inc., 601 So.2d 1243, 1245 (Fla. 1st DCA 1992). Where the language of a policy is plain and unambiguous this Court must enforce the policy as written. See Siegle v. Progressive Consumers Ins.

Co., 788 So.2d 355, 359 (Fla. 4th DCA 2001). The failure to provide a definition of a term (or terms) does not render a provision ambiguous. See Elysee, 601 So.2d at 1245. Instead, the words and phrases in a policy are to be given " 'their everyday meaning and read in light of the skill and experience of ordinary people.' " See Siegle, 788 So.2d at 359–60 (quoting Lindheimer v. St. Paul Fire & Marine Ins. Co., 643 So.2d 636, 638 (Fla. 3d DCA 1994)). The terms of a policy are to be construed, however, in a manner that provides the broadest coverage to an insured. See Northbrook Property & Casualty Ins. Co. v. R & J Crane Service, Inc., 765 So.2d 836, 840 (Fla. 4th DCA 2000).

The provision of the Policy that this Court is interpreting states that State Farm will pay the "cost of replacing or repairing the lost or damaged property." Policy § I–Conditions, ¶ 1(a)(2), at 15. This provision is not ambiguous. This provision means that State Farm will pay all costs that are directly related to restoring the Property because of the covered loss.

In this case, the parties agree that the residents,[8] despite the loss, are currently living in the units. It is also undisputed that the residents must relocate because: (1) the repairs will cause the units to be uninhabitable because they involve the blocking of access to kitchens and bathrooms, the removal of some exterior walls, and the release of asbestos fibers into the air, and (2) the repairs can be performed at significantly less cost if no one is living in the units. The repairs must be per-

---

8. State Farm also argues that the unit owners are not insured persons under the Policy. The Policy language cited by State Farm, however, points to coverage for relocation expenses for owners as it makes unit-owners an insured for liability (expenses) arising out of repairs, which based on this Court's reasoning would include personal relocation costs. Additionally, State Farm argues that non-owners are not an insured under any provision of the policy. This is an argument about the amount of loss that State Farm should have made (and maybe did) to the appraisal panel. State Farm agreed to be bound by the Award. This Court will not look behind the Award and recalculate that amount in such a situation.

formed in a safe manner. When repairs cannot be safely performed without removal of the residents, that expense is part of the repair cost. Likewise, if repairs can be made at a lesser overall cost with the residents removed and the insurer chooses this lower cost alternative, the removal of residents is part of the cost of repair. Both circumstances apply in this case.

This Court's interpretation of this provision is reinforced by and is consistent with Florida law. While there is no Florida case directly interpreting what costs are recoverable as repair costs, the First District Court of Appeal has allowed for the recovery as a repair cost for non-structural items integral to a covered property. *See Azalea, Ltd. v. American States Ins. Co.,* 656 So.2d 600, 602 (Fla. 1st DCA 1995).

In *Azalea,* someone dumped an unknown substance into a sewage treatment plant causing the plant to shut down. *See id.* at 601. The structure of the plant was not damaged, but the chemical substance caused a residue to chemically bond to the interior of the structure and also killed bacteria which were integral to the plant's operations. *See id.* at 601–02. The First District Court of Appeal reversed a trial court's determination that there was no "direct physical loss" to the plant from vandalism. *See id.* at 602. The court had two rationales in reaching its decision. First, the structure had been harmed when the chemical residue adhered to the interior of the structure causing the facility to become inoperable. *See id.* Second, the bacteria was an integral part of the plant and destruction of the bacteria colony also caused actual harm to the plant. *See id.* In either case, the Court found that the trial court erred in denying coverage for the repair costs, including the cost of a new bacteria colony. *See id.*

*Azalea* stands for the proposition that under Florida law "direct physical loss" includes more than losses that harm the structure of the covered property. It also stands for the proposition that repair costs may include more than costs to repair the structure of a building. Both propositions support this Court's interpretation of the Policy.

State Farm has taken the position under the Policy that construction expenses as well as the expense for removing the personal property of the residents are covered, but personal relocation expenses are not because they are too personal and collateral. State Farm relies primarily on a Delaware trial court opinion. *See Olde Colonial Village Condominium Council v. Millers Mutual Ins. Co.,* case no. 99C–06–187–FSS, 2002 WL 122885, at * 10 (Del.Super. Jan.28, 2002). In that case, the residents relocated because the underlying loss endangered them. The court stated that personal relocation expenses were too collateral and personal and not supported by the policy. *See id.* The court, however, stated that the insurer was liable for "all directly related, construction expense," which included expenses "for other work if it was made necessary" by the reconstruction. *See id.*

In the factual situation before this Court, the personal relocation expenses are directly related and were made necessary by the reconstruction of the units. First, this Court sees no distinction between personal relocation expenses and the expense of removing personal property from the residence. In either case, the displacement of persons or property was directly caused by the repairs. Second, *Olde Colonial* is distinguishable from the facts of this situation. The displacement in *Olde Colonial* was caused by the loss and not later by the repair like this case. This Court would agree with State Farm that if the collapse in question caused the condemnation of the units, then there would be no coverage for relocation ex-

penses under Florida law. *See Azalea*, 656 So.2d at 600 (holding that absent a loss of use provision expenses when the plant shut down because of contamination were not recoverable). Because the method of repairing the units, not the loss itself, makes the units uninhabitable, the resident's relocation expenses are covered.

State Farm has also argued that the absence of a loss of use provision prevents coverage of personal relocation expenses.[9] This argument cuts both ways because it could be argued that the absence of an exclusion for loss of use allows for personal relocation expenses to be recovered. This latter argument is more forceful than State Farm's argument because this Court is to construe the Policy to allow for the broadest coverage possible.[10] *See North-brook Property & Casualty Ins. Co. v. R & J Crane Service, Inc.*, 765 So.2d 836, 840 (Fla. 4th DCA 2000). This Court need not depend on the absence of a loss of use provision or exclusion because relocation costs are covered as repair costs under the plain meaning of the Policy.

## C. State Farm's "coverage" defense is contrary to the findings of the Award.

Another issue raised by this case (which neither party fully addresses) is what effect do the findings in the Award have on State Farm's challenge to repair costs determined by the appraisers. This Court concludes that to allow State Farm to attack the availability of personal relocation expenses would be contrary to the findings in the Award that State Farm contractually agreed would be binding.

The Florida Supreme Court in *Johnson* distinguished between situations where an appraiser was "appraising the amount of a loss which the insurer admitted was covered" and situations where "the issue was one of whether the policies covered the losses ...." 828 So.2d at 1025.[11] In the former situations where the insurer admits that the loss is covered, the Supreme Court adopted the view of the Third District Court of Appeal and held that appraisers could determine the amount of loss attributable to the covered peril. *See id.* (quoting from *Gonzalez*, 805 So.2d at 816–17).

No Florida court has specifically addressed whether an insurer can raise a "coverage" defense to a specific cost found recoverable by an appraisal panel. As decided above, State Farm's challenge is not as much a coverage question, but a question of whether personal relocation expenses should be included within the costs of repair. This issue was resolved, however, by the appraisal panel's finding that

9. This Court would note that Florida courts have found loss of use coverage to primarily compensate insureds when a covered loss makes the premises uninhabitable or unusable. *See, e.g., Highlands Ins. Co. v. Kravecas*, 719 So.2d 320, 321–22 (Fla. 3d DCA 1998). While loss of use coverage arguably extends to loss of use when the repair of the covered loss makes the premises uninhabitable or unusable, the primary purpose of having such provision is to cover losses when the loss itself makes the premises uninhabitable or unusable.

10. In addition, while this loss occurred under Section I of the Policy, this Court would note that the Policy defines property damage in Section II to mean either "physical injury to or destruction to tangible property, including all resulting *loss of use* of that property" or "*loss of use* of tangible property that is not physically injured or destroyed ...." This definition seems to support this court's interpretation of the Policy.

11. In other words, when the insurer admits that the loss is covered, the appraisers can determine the cause of damage and the amount of that loss without judicial review of that decision (other than through Florida Statutes §§ , 682.13, 682.14). When the insurer claims that the loss is not covered, then the coverage question must be judicially determined.

personal relocation expenses were the "necessary and direct result of the construction and repair process" and not expenses caused by the collapse itself.

If this Court were to rule in State Farm's favor, then the amount of the Award would not be binding.[12] Both parties agreed that the Award would be binding and this Court will not ignore the parties' agreement. Deciding what costs should be included within the costs of repair is a decision that the appraisal panel was capable of making and made in favor of Three Palms.

### D. Payment of personal relocation expenses were due within twenty days of the Award.

 Finally, State Farm argues that payment of the $560,000 is not yet due, because no loss for personal relocation expenses has yet been incurred. State Farm relies on the valuation section of the Policy in support of its argument. *See* Policy, § I–Conditions, ¶ 2(a)(3)(c) (stating that State Farm will reimburse expenses after they are incurred). State Farm's argument, however, ignores the Policy's loss payment section. *See id.,* § I–Conditions, Amendatory Endorsement (Florida), ¶ 1(e)(2). The loss payment section requires payment within twenty (20) days of an appraisal award. *See id.* This loss payment language and not the valuation language in the Policy controls when State Farm must pay the amount of loss.

### CONCLUSION

Under the facts presented in this case, personal relocation expenses of residents are recoverable as part of repair costs. State Farm agreed to be and is bound by the Award, which included $560,000 for personal relocation expenses. This Court will not second guess the amount of loss

determined by the appraisal panel under such circumstances. Accordingly, this Court denies State Farm's Motion for Partial Judgment on the Pleadings as to Count I of the Complaint (Dkt.# 30) and Motion for Summary Judgment as to Count II of the Complaint (Dkt.# 31) and grants Three Palms' Motion for Summary Judgment (Dkt.# 32).

It is, therefore, **ORDERED AND ADJUDGED** as follows:

1. State Farm's Motion for Partial Judgment on the Pleadings as to Count I of the Complaint (Dkt.# 30) is **DENIED**.

2. State Farm's Motion for Summary Judgment as to Count II of the Complaint (Dkt.# 31) is **DENIED**.

3. Plaintiff's Dispositive Motion for Summary Judgment (Dkt.# 32) is **GRANTED**.

4. The Clerk is directed to enter a judgment in favor of Three Palms Pointe, Inc. against State Farm Fire and Casualty Co. in the amount of $560,000.

5. This Court retains jurisdiction to determine Three Palms Pointe, Inc.'s entitlement and amount of pre-judgment interest, attorneys' fees, and costs.

6. All pending motions are denied as moot.

7. The Clerk is directed to close this case.

---

12. If this Court allowed State Farm to challenge the amount of the award, Three Palms seemingly would also be free to present a new theory on repair costs. The appraisal would have been a waste of the parties time.