687 So.2d 1331 (1997)
FLORIDA FARM BUREAU CASUALTY INSURANCE CO., Appellant,
v.
Jason P. SHEAFFER and Vivian L. Sheaffer, Appellees.
No. 96-2504.
District Court of Appeal of Florida, First District.
January 31, 1997.
Rehearing Denied March 11, 1997.
Nancy A. Lauten and George A. Vaka of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Appellant.
*1332 Ray P. Pope of the Cordovan Law Center, Pensacola, for Appellees.
VAN NORTWICK, Judge.
Florida Farm Bureau Casualty Insurance Company appeals a nonfinal order denying its motion to dismiss the complaint filed by its insureds, appellees, Jason and Vivian Sheaffer, and to compel arbitration under the provisions of the Sheaffers' homeowner's insurance policy. The Sheaffers' complaint sought recovery under their homeowner's insurance policy for damages to the tile roof of their home which was caused by hurricanes Erin and Opal in 1995. In seeking dismissal, the insurance company argued that the appraisal provision in the insurance policy required the parties to arbitrate their dispute and that the arbitration was a condition precedent to the insureds maintaining an action on the policy. We agree, and reverse and remand for the trial court to order arbitration.

Factual and Procedural Background
As alleged in the complaint, the Sheaffers' home was built in 1991 with a unique ceramic tile roof. The manufacturer of the ceramic tiles is no longer in business, and the Sheaffers allege that no tiles are presently available which match the existing tiles in color, size and shape. The Sheaffers' policy covers losses "at replacement cost without deduction for depreciation" subject to certain enumerated conditions. The Sheaffers demanded that the insurance company pay for the replacement of their entire roof in order to return the roof to its condition and value prior to the loss. The insurance company refused, maintaining that the roof could be repaired by replacing only the damaged and missing tiles, even if the replacement tiles are not consistent with the existing tiles. Accordingly, the Sheaffers filed suit seeking both a declaratory judgment that would require the insurer to provide "coverage for full replacement of Plaintiffs' roof, and attendant repairs" and a judgment for damages.
The insurance company moved to dismiss the complaint and demanded appraisal of the dispute pursuant to the following appraisal provision in the policy:
Appraisal. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agree upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
Each party will:
a. pay its own appraiser; and
b. bear the other expenses of the appraisal and umpire equally.
The Sheaffers argued below, as here, that this appraisal provision is not an agreement to arbitrate. They contend that this appraisal provision is limited in scope and applies only in the event the parties disagree on the limited issue of how much it will cost to replace the roof. Thus, the Sheaffers argue, the provision does not apply to the issue of whether the entire roof should be replaced under these unique facts. Under the Sheaffers' theory, whether the entire roof must be replaced is a "coverage" issue which requires judicial construction of the policy language. The insurance company argues in response that, because it concedes that the insurance policy covers the damage to the Sheaffers' home and it would be bound by the appraisers' determination that replacement of the entire roof was required, there is no coverage dispute between the parties, but simply a dispute regarding the amount of the loss.
After concluding that the dispute between the parties involved an issue of coverage under the policy, the trial court denied the motion to dismiss. This appeal followed.

*1333 Jurisdiction

Pursuant to article V, section 4(b)(1) of the Florida Constitution, district courts of appeal have the jurisdiction to review by appeal only those non-final orders "in such cases to the extent provided by rules adopted by the supreme court." Florida Rule of Appellate Procedure 9.030(b)(1)(B), authorizes district courts of appeal to review by appeal "non-final orders of circuit courts as prescribed by rule 9.130." Under the circumstances of the instant case, the only part of rule 9.130 that might allow review of the trial court's interlocutory order is subparagraph 9.130(a)(3)(C)(v), which grants jurisdiction to review non-final orders "that ... determine... the entitlement of a party to arbitration." Accordingly, here we have jurisdiction to review the order on appeal only if we determine that the appraisal provision in the Sheaffers' insurance policy entitles the insurer to arbitration of the dispute between the parties. Because, for the reasons discussed below, we conclude that the appraisal provision constitutes an agreement to arbitrate, we have jurisdiction.

Appraisal as Arbitration
Traditionally, agreements for arbitration involved a scope and purpose much different from agreements for appraisal. As explained by the court in Preferred Ins. Co. v. Richard Parks Trucking Co., 158 So.2d 817, 820 (Fla. 2d DCA 1963)(quoting 5 Am. Jur.2d, Arbitration and Award § 3, now found at 4 Am.Jur.2d, Alternative Dispute Resolution § 12 (1995)):
[a]n agreement for arbitration ordinarily encompasses disposition of the entire controversy between the parties upon which award a judgment may be entered, whereas an agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for determination in a plenary action before the court.
The Parks Trucking court also recognized that the distinctions between the traditional appraisal and arbitration processes are most obvious in the role of and procedures used by the decision-makers.
[A]ppraisers are generally expected to act on their own skill and knowledge; they may reach individual conclusions and are required to meet only for the purpose of ironing out differences in the conclusions reached; and they are not obliged to give the rival claimants any formal notice or to hear evidence, but may proceed by ex parte investigation so long as the parties are given opportunity to make statements and explanations with regard to matters in issue. Arbitrators, on the other hand, must meet together at all hearings; they act quasi-judicially and may receive the evidence or views of a party to the dispute only in the presence, or on notice to, the other side; and may adjudge the matters to be decided only on what is presented to them in the course of an adversary proceeding.
Id.
Despite these traditional distinctions between appraisal and arbitration, with the increased use of various forms of alternative dispute resolution, Florida courts have interpreted appraisal provisions similar to the instant provision as constituting binding arbitration agreements. State Farm Fire & Cas. Co. v. Middleton, 648 So.2d 1200, 1202 (Fla. 3d DCA 1995); Preferred Mut. Ins. Co. v. Martinez, 643 So.2d 1101 (Fla. 3d DCA 1994); American Reliance Ins. Co. v. Village Homes at Country Walk, 632 So.2d 106 (Fla. 3d DCA 1994); Intracoastal Ventures Corp. v. Safeco Ins. Co. of Am., 540 So.2d 162 (Fla. 4th DCA 1989); U.S. Fire Ins. Co. v. Franko, 443 So.2d 170 (Fla. 1st DCA 1983); Transamerica Ins. Co. v. Weed, 420 So.2d 370 (Fla. 1st DCA 1982). For example, in Weed, this court treated as an arbitration agreement an appraisal provision virtually identical to the provision at issue here, noting that "[t]he `appraisal' provision in the policy is in fact an agreement to submit to arbitration in the event of disagreement on the amount of loss." 420 So.2d at 371, n. 1. Florida courts also agree that appraisal under such provisions is a condition precedent to any suit on the policy. New Amsterdam Cas. Co. v. J.H. Blackshear, Inc., 116 Fla. 289, 291, 156 So. 695, 696 (1934); State Farm Fire & Cas. Co. v. Middleton, 648 So.2d 1200 (Fla. 3d DCA *1334 1995); Preferred Mut. Ins. Co. v. Martinez, 643 So.2d 1101, 1103 (Fla. 3d DCA 1994); Intracoastal Ventures Corp. v. Safeco Ins. Co. of Am., 540 So.2d 162 (Fla. 4th DCA 1989); and U.S. Fire Ins. Co. v. Franko, 443 So.2d 170, 172 (Fla. 1st DCA 1983). Consistent with the above authority, we conclude that the appraisal provision before us in the instant case is an agreement to arbitrate.

No Coverage Question Involved
As the supreme court has recently pointed out, "[a] challenge of coverage is exclusively a judicial question...." State Farm Fire and Casualty Co. v. Licea, 685 So.2d 1285, ___ (Fla.1996)(quoting Midwest Mutual Ins. Co. v. Santiesteban, 287 So.2d 665, 667 (Fla.1973)). Thus, if the dispute over whether the insurer is obligated to replace the entire roof is a coverage issue, it may not be the subject of arbitration or appraisal. In the instant case, however, we conclude that the dispute between the parties does not involve a question of "coverage," but concerns only the amount of loss.
In considering whether the instant case involves a coverage dispute, we find persuasive Judge Farmer's reasoning in J.J.F. of Palm Beach, Inc. v. State Farm Fire and Cas. Co., 634 So.2d 1089, 1090 (Fla. 4th DCA 1994):
Where the amount owed on a claim, arguably within the policy coverage, is dependent on the resolution of disputed issues of fact and the application of policy language to those facts ... the extent of the claim does not constitute a "coverage" question.
Thus, once it is either admitted that the claim is within the class of claims covered by the policy, or the trial court makes that determination,
whether the claimant is actually entitled under the facts of the case to be paid on a claim and, if so, the precise amount to which the claimant is entitled, is a question reserved for the arbitrator.
Id. at 1091.
Further, the insurance company conceded below that the damage to the roof of the Sheaffers' home is a covered claim. Thus, the only dispute that can remain in the instant case is the scope of the required repair or replacement and the amount of loss. The insurance company has also agreed that, if the appraisers find that the Sheaffers' roof must be replaced as a result of the damaged tiles, the insurer would be bound by that decision up to the limits of the policy.

Appraisal Procedures
The Sheaffers also argue in substance that, because the traditional role of an appraiser is not quasi-judicial and traditional appraisal procedures offer substantially fewer due process protections to the parties than arbitration, see Parks Trucking, 158 So.2d at 820, the instant appraisal provision should not be read as an arbitration agreement. We find this argument without merit.
The determination of whether an appraisal provision should be construed as an agreement to arbitrate not only establishes the basis of our jurisdiction over the case on appeal, it also establishes the procedures which govern this type of alternative dispute resolution. Here, as the insurance company concedes, the appraisers will be involved in more than a simple computation of repair costs to determine the amount of loss. Rather, they must resolve whether the language of this replacement cost policy requires a calculation of loss which would consider the subjective value the Sheaffers placed on the unique qualities of their tile roof, or whether replacement of the roof should be ordered only if it is necessary to prevent the roof from leaking. See, Higginbotham v. New Hampshire Indem. Co., 498 So.2d 1149 (La. App. 3d Cir.1986), cert. denied, 501 So.2d 236 (La.1987). In addition to interpreting the language of the policy, the appraisers will be required to evaluate such considerations as the owners' subjective value of the home with matching tiles, any diminution in market value of the home that is reasonably likely to result from a repair without matching tiles, the reasonable costs of making the repairs compared to the probable loss in value to the owners, and the availability and cost of comparable tiles, if any. Thus, the nature of the appraisers' duties will require the exercise of quasi-judicial authority to resolve the dispute. *1335 Further, these issues are likely to be beyond the knowledge and expertise of the appraisers and will require examination of witnesses to make a correct and fair determination of the loss suffered.
Because we conclude that the instant appraisal provision constitutes an arbitration agreement, we also conclude that the agreement is governed by the Florida Arbitration Code, chapter 682, Florida Statutes (1995). Travelers Ins. Co. v. Luckett, 279 So.2d 885, 886 (Fla. 3d DCA 1973)(an agreement to arbitrate amount of damages between insurer and insured is governed by the provisions of the Florida Arbitration Code). In Cassara v. Wofford, 55 So.2d 102, 105 (Fla.1951), the supreme court explained the importance of procedural safeguards in arbitration proceedings, as follows:
It therefore becomes of the utmost importance that in statutory proceedings of this character, where the rights of parties are adjudicated, not by trained lawyers and judges, but by fellow business men, every safeguard possible should be thrown about the proceeding to insure the utmost fairness and impartiality of those charged with the determination of the rights of the parties.
Thus, the Cassara court recognized that with regard to quasi-judicial arbitration proceedings:
[I]t is universally held that ... as in all judicial proceedings, persons whose rights and obligations are affected thereby have an absolute right to be heard and to present their evidence, after reasonable notice of the time and place of the hearing; and that failure of the arbitrators to give notice and an opportunity to be heard is such misconduct or misbehavior as will vitiate an award, irrespective of the fact that there may have been no corrupt intention on the part of the arbitrators.
Id. at 106.
Here, the appraisal provision neither excludes application of the Florida Arbitration Code, see, section 682.02, Florida Statutes (1995); Sun City Diner of Boca Raton, Inc. v. Century Financial Advisors, Inc., 662 So.2d 967, 968 (Fla. 4th DCA 1995), nor sets forth procedures inconsistent with the Arbitration Code. While a requirement for notice and an opportunity to be heard in proceedings before appraisers is not well-settled in the United States,[1] consistent with the policy expressed in Cassara and the legislative intent of the Arbitration Code, we conclude that the proceeding contemplated by the insurance policy in this case is required to be conducted in accordance with the procedures set forth in the Florida Arbitration Code. Section 682.01 et seq., Florida Statutes; Intracoastal Ventures Corp., 540 So.2d at 163; see also, Weinger v. State Farm Fire & Cas. Co., 620 So.2d 1298, 1299 (Fla. 4th DCA 1993)(appraisers acting pursuant to appraisal provision which is in effect an arbitration agreement must be governed by rule of impartiality applicable to arbitrators).
Accordingly, this cause is remanded to the trial court to order arbitration. The trial court shall retain jurisdiction for purposes of enforcement. United Community Ins. Co. v. Lewis, 642 So.2d 59 (Fla. 3d DCA 1994).
REVERSED and REMANDED for proceedings consistent with this opinion.
JOANOS and PADOVANO, JJ., concur.
NOTES
[1] See D.E. Ytreberg, Annotation, Insurance: Necessity and Notice of and Hearing In Proceedings Before Appraisers and Arbitrators Appointed to Determine Amount of Loss, 25 A.L.R.2d 680 (1969).