833 So.2d 762 (2002)
ALLSTATE INSURANCE COMPANY, Petitioner,
v.
Luis SUAREZ and Lilia Suarez, Respondents.
No. SC01-1459.
Supreme Court of Florida.
December 12, 2002.
Christopher J. Lynch of Angones, Hunter, McClure, Lynch, Williams & Garcia, P.A., Miami, FL, for Petitioner.
John S. Cosgrove of Cosgrove Law Offices and Jeanne Heyward, Miami, FL, for Respondents.
PER CURIAM.
We have for review the decision in Allstate Insurance Co. v. Suarez, 786 So.2d 645 (Fla. 3d DCA 2001), which certified conflict with the decision in Hoenstine v. State Farm Fire & Casualty Co., 736 So.2d 761 (Fla. 5th DCA 1999), and Florida Farm Bureau Casualty Insurance Co. v. Sheaffer, 687 So.2d 1331 (Fla. 1st DCA 1997). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We approve the Third District's decision in this case for the reasons explained herein.

FACTS
On August 24, 1992, the Suarez home was damaged by the force of Hurricane Andrew. See Suarez, 786 So.2d at 646. The Suarezes were insured by an Allstate Insurance Company homeowner's policy, which provided:
Appraisal. If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand each party must select a competent and impartial appraiser and notify the other of the appraiser's *763 identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge or a court of record in the state where the resident premises is located to select an umpire. The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by any two will determine the amount of loss.
Id. Allstate initially paid a Suarez claim based on damage from Hurricane Andrew in September of 1992. See id. However, in June of 1997, the Suarezes filed a supplemental claim and disputed the adequacy of the amount of the initial payment. See id. Allstate denied the supplemental claim, citing to the September 1992 payment as full reimbursement for the hurricane damage. See id. The Suarezes sought relief in circuit court, filing a complaint for declaratory relief and a petition to compel appraisal. See id. After the trial court granted the Suarezes' petition to compel an appraisal against Allstate, the trial court appointed a neutral appraisal umpire and the parties chose two other appraisers.[1]See id. Allstate thereafter contended that the appraisal umpire should apply the Florida Arbitration Code to the appraisal proceedings, but the umpire denied Allstate's request and conducted an informal appraisal hearing. See id. After the umpire and two appraisers rendered an award, the trial court entered a final judgment granting the plaintiffs' motion to confirm the appraisal award. See id. Allstate's motion to vacate the award, on the basis that the Arbitration Code should have been applied in the appraisal hearing, was denied. See id.
The Third District affirmed the trial court's award to the Suarezes, rejecting Allstate's claim that arbitration rules should have been applied, explaining:
Both parties agree that the insurance contract contained an appraisal provision for the purpose of settling disputes relating to the valuation of a loss. Such provisions are common in homeowners insurance policies....
. . . .
... Here, as in Hernandez, the agreement specifically provides for an appraisal. It is difficult to imagine that a formal arbitration hearing was within the contemplation of the parties when entering into the agreement.
See id. at 646-47.[2] The Third District held that "the trial court was correct in upholding the neutral umpire's decision to conduct the appraisal in an informal manner," certifying conflict with Hoenstine and Sheaffer. Id. at 647.

APPRAISAL CLAUSE
In Florida Farm Bureau Casualty Insurance Co. v. Sheaffer, 687 So.2d 1331 (Fla. 1st DCA 1997), the Sheaffers' roof was damaged by hurricane, and, because matching tiles for their roof were no longer *764 being made, they sought to have their insurer cover the replacement cost for an entirely new roof. See id. at 1331-32. The insurance company refused, stating that the roof could still be repaired with inconsistent tiles. See id. The Sheaffers filed suit seeking a declaratory judgment for the full coverage and replacement of their roof and a judgment for damages. See id. The insurance company sought to have the suit dismissed, claiming that the Sheaffers' suit should be handled according to the policy's appraisal clause.[3]See id. The insurance company further argued that the policy's appraisal clause required the parties to arbitrate the matter, pursuant to the Florida Arbitration Code, as a condition precedent to the Sheaffers maintaining their lawsuit. See id.
The Sheaffers countered that the issue of replacing the entire roof was a "coverage" issue, which would require judicial construction of the policy. See id. The trial court denied the insurance company's motion to dismiss, concluding that the parties' dispute involved an issue of policy coverage. See id. The First District reversed and remanded the trial court's ruling, finding that the appraisal provision constituted an arbitration agreement, stating:
The determination of whether an appraisal provision should be construed as an agreement to arbitrate not only establishes the basis of our jurisdiction over the case on appeal, it also establishes the procedures which govern this type of alternative dispute resolution. Here, as the insurance company concedes, the appraisers will be involved in more than a simple computation of repair costs to determine the amount of loss. Rather, they must resolve whether the language of this replacement cost policy requires a calculation of loss which would consider the subjective value the Sheaffers placed on the unique qualities of their tile roof, or whether replacement of the roof should be ordered only if it is necessary to prevent the roof from leaking.... Thus, the nature of the appraisers' duties will require the exercise of quasi-judicial authority to resolve the dispute. Further, these issues are likely to be beyond the knowledge and expertise of the appraisers and will require examination of witnesses to make a correct and fair determination of the loss suffered.
Id. at 1334-35.
In Hoenstine v. State Farm Fire & Casualty Co., 736 So.2d 761 (Fla. 5th DCA 1999), the Fifth District considered an appraisal provision "nearly identical" to the one in Sheaffer. Id. at 761.[4] The Hoenstines *765 and their insurance company disagreed about "the values of property damaged by a tornado." Id. After the trial court ruled that the appraisal clause in the insurance policy contemplated an informal procedure instead of a formal arbitration hearing, the Fifth District reversed, agreeing with the holding in Sheaffer that the appraisal clause in the Hoenstine's policy should be treated as a binding arbitration agreement. See id. at 761-62.

AGREEMENT FOR APPRAISAL
The issue to be resolved is whether an unambiguous provision for appraisal may be construed as an agreement to arbitrate the underlying dispute. As we stated in Siegle v. Progressive Consumers Insurance Co., 819 So.2d 732 (Fla.2002): "When an insurance contract is not ambiguous, it must be given effect as written. See State Farm Fire & Cas. Co. v. Oliveras, 441 So.2d 175, 178 (Fla. 4th DCA 1983)." Id. at 735.
Neither the trial court nor the Third District in Suarez found the appraisal clause in the homeowner's policy to be ambiguous, nor do we find any ambiguity in the clause. It is clear from a plain reading of the clause that an informal appraisal proceeding, not a formal arbitration hearing pursuant to section 682.06, Florida Statutes (1999), was intended and agreed upon by the parties in agreeing to the appraisal provisions of the policy. See Liberty Mut. Fire Ins. Co. v. Hernandez, 735 So.2d 587, 589 (Fla. 3d DCA 1999) ("[T]he clause contemplates inspection and valuation by each appraiser individually, not a trial-type hearing.").
We disapprove of the decisions in Sheaffer and Hoenstine, because the appraisal clauses in those cases were substantially similar to the one in the present case, and a plain reading of those clauses reveals that formal arbitration was not contemplated or agreed upon by the parties. In Sheaffer, the First District went beyond the plain meaning of the appraisal clause when it considered that the appraisers would have to "exercise ... quasi-judicial authority to resolve the dispute." 687 So.2d at 1334. Further, we disapprove of the analysis that "the appraisal provision neither excludes application of the Florida Arbitration Code, nor sets forth procedures inconsistent with the Arbitration Code." Id. at 1335 (citations omitted). Once a trial court has determined that the appraisal provisions of a contract of insurance have been properly invoked, further proceedings should be conducted in accord with those provisions, rather than by the wholly different proceedings contemplated by an agreement to arbitrate.[5]
*766 Thus, we agree with the Third District's conclusion in this case that "the agreement specifically provides for an appraisal. It is difficult to imagine that a formal arbitration hearing was within the contemplation of the parties when entering into the agreement." Suarez, 786 So.2d at 647. Once the trial court in this case found that the Suarezes properly invoked the appraisal clause and directed the parties to appraisal proceedings, the umpire correctly followed the trial court's ruling by refusing to proceed under the formal procedures of the Arbitration Code.
Accordingly, we approve the decision of the district court of appeal and disapprove the holdings in Sheaffer and Hoenstine.
It is so ordered.
ANSTEAD, C.J., and SHAW, WELLS, PARIENTE, LEWIS and QUINCE, JJ., concur.
CANTERO, J., recused.
NOTES
[1] It appears that the Third District twice mistakenly refers to the two appointed appraisers as "arbitrators." See Suarez, 786 So.2d at 646. The record reflects that two appraisers were appointed by the parties.
[2] See Liberty Mut. Fire Ins. Co. v. Hernandez, 735 So.2d 587 (Fla. 3d DCA 1999) (noting that although appraisal clauses are often treated as arbitration clauses, the two procedures are very different and finding that the clause in that case did not contemplate a trial-type hearing).
[3] The appraisal clause discussed in Sheaffer stated:

Appraisal. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agree [sic] upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
Each party will:
a. pay its own appraiser; and
b. bear the other expenses of the appraisal and umpire equally.
Sheaffer, 687 So.2d at 1332.
[4] The appraisal clause disputed in Hoenstine stated:

6. APPRAISAL. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser. Each shall notify the other of the appraiser's identity within twenty (20) days of receipt of the written demand. The two (2) appraisers shall then select a competent, impartial umpire. If the two (2) appraisers are unable to agree upon an umpire within fifteen (15) days, you or we can ask a judge of a court of record in the State where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers fails [sic] to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.
Hoenstine, 736 So.2d at 761.
[5] Cf. Johnson v. Nationwide Mut. Ins. Co., 828 So.2d 1021 (Fla.2002) (holding that causation is a coverage question for the court, not the appraisal panel, when the insurer denies that there is a covered loss).