## CIRCUIT COURT OF FAIRFAX COUNTY

Robert J. Coates, III,
and Melanie D. Coates

v.

Erie Insurance Exchange et al.

November 4, 2009

Case No. CL-2009-1456

BY JUDGE MICHAEL P. MCWEENY

This matter came before the Court on the parties' Cross-Motions for Summary Judgment. The Court heard argument on October 16, 2009. At the conclusion of oral argument, the Court took this matter under advisement.

The Court has fully considered the briefs submitted as well as the oral arguments of both parties and, for the reasons set forth below, the Court grants Plaintiffs' Motion for Summary Judgment.

*Background*

This matter arises out of litigation concerning submission of an insurance dispute between Plaintiffs Robert Coates and Melanie Coates, and Defendant Erie Insurance Exchange ("Erie"), to appraisal. It is undisputed that electrical wiring, circuits, and some other contents of the Coates home were damaged by an electrical power surge (the "Event") on February 21, 2007. The parties have stipulated that the Event was covered under the insurance policy between the Coates and Erie. However, the parties disagree as to the extent of repairs required to correct the damage.

The Coates claim that repairing the damage to the electrical wiring necessitates removal and replacement of the undamaged walls and trim surrounding the wiring. They estimate that the repairs will cost approximately $439,000. Erie claims that the repairs can be made without removing the undamaged walls and trim by feeding new wiring behind the existing structure. Erie estimates that this will cost approximately $60,000.

The insurance policy includes an appraisal clause permitting a dispute as to "amount of loss" to be submitted to an appraisal process upon demand of either party. The Coates claim that this is a dispute over "amount of loss," and demand submission to appraisal pursuant to the policy. Erie refuses to submit to appraisal, claiming that this is a dispute over causation and coverage that is inappropriate for appraisal.

The Coates filed suit on February 3, 2009, seeking a Declaratory Judgment compelling Erie's submission to appraisal. The parties then filed the instant Cross-Motions for Summary Judgment

## Standard of Review

Summary judgment is a procedure which gives courts the ability to end litigation at an early stage of the proceedings where it "*clearly* appears that one of the parties is entitled to a judgment as made out by the pleadings and the parties' admissions." *Renner v. Stafford*, 245 Va. 351, 353, 429 S.E.2d 218 (1993) (emphasis in original). Summary judgment is proper only when there are no material facts genuinely in dispute. *Carson v. LeBlanc*, 245 Va. 135, 139, 427 S.E.2d 189 (1993); Va. Sup. Ct. Rules 3:18, 3:20. In considering a motion for summary judgment, a court must adopt all inferences most favorable to the non-moving party, "unless the inferences are strained, forced, or contrary to reason." *Bloodworth v. Ellis*, 221 Va. 18, 23, 267 S.E.2d 96 (1980).

## Analysis

Va. Code § 38.2-2105 requires that all insurance policies include an appraisal clause which requires that either party, upon written demand, submit a dispute concerning "amount of loss" to the appraisal process. The appraisal clause in the policy at issue reads in pertinent part:

APPRAISAL: If you and we fail to agree on the *amount of loss*, on written demand of either, each party will choose a competent appraiser and notify the other of the appraiser's identity within

twenty days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within fifteen days after both appraisers have been identified, you or we can ask a judge of a court of record in the state where your residence premises is located to select an umpire.

*Policy of Insurance,* Rights and Duties — Conditions — Section I, (2) Appraisal, P. 12 (emphasis added).

The mandatory language of the appraisal clause recited in Va. Code § 38.2-2105, states in part that:

> In case the insured and this Company shall fail to agree as to *the actual cash value or the amount of loss,* then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located.

(Emphasis added.)

As noted by Erie, the language of the policy must contain this language or language no less favorable to the insured, and therefore the policy will be interpreted in that light. It is agreed by the parties that the determining factor in triggering the appraisal clause, therefore, is whether the dispute concerns the "amount of loss."

The Coates argue that there is a bright line test for this determination. Once the insurer admits coverage of the event itself, any dispute over the cost of repair is a disagreement as to "amount of loss" and either party then may compel the appraisal process. Erie argues that "amount of loss" refers to assigning an itemized cash value to each item of the lost property, and therefore a dispute over what must be replaced is a question of coverage, causation, and liability under the policy that is inappropriate for appraisal.

The phrase "amount of loss" is not defined in the policy. It is not defined in the Virginia Code, nor has its meaning been construed by a Virginia court. The phrase "amount of loss," however, has been construed by foreign jurisdictions which have adopted appraisal statutes with language nearly

identical to Va. Code § 38.2-2105. Thus, while this Court is not bound by precedent on this question, it will look to these decisions for guidance in reaching its conclusion.

The United States District Court for the District of Delaware squarely addressed the meaning of "amount of loss" in *CIGNA v. Didimoi Property Holdings, N.V.*, 110 F. Supp. 2d 259 (D. Del. 2000). In *CIGNA*, a dispute arose as to the extent of repair necessary to restore a building after a fire covered under the policy had rendered the building untenable. *Id.* at 261. Considering an insurance policy with similar appraisal language as in the case at hand, the Court held that "an appraiser's assessment of the 'amount of loss' necessarily includes a determination of the cause of the loss, as well as the amount it would cost to repair that which was lost." *Id.* at 264. The Court found "amount of loss" to mean, at the very least, more than assigning an itemized cash value to each item of lost property.

This rationale is further supported by the language of Va. Code § 38.2-2105. The statute states that appraisal may be compelled if the parties disagree as to "the actual cash value *or* the amount of loss." Va. Code § 38.2-2105 (emphasis added). The statute refers to "actual cash value" and "amount of loss" in the disjunctive. "Amount of loss" must therefore have meaning apart from assigning an itemized cash value to damaged property.

In many of the cases that have addressed appraisal, as in *CIGNA*, there is a dispute as to whether the event was the cause of the damage to the claimed items. In *Kawa v. Nationwide Mutual Fire Ins. Co.*, 174 Misc. 2d 407, 664 N.Y.S.2d 430 (1997), the Supreme Court of New York for Erie County held that an appraisal clause "only applies to a case with a disagreement as to amount of loss or damage, and not where the insurer denies liability." *Id.* at 430 (quotations omitted). However, in *Kawa*, the insurer denied liability on the basis that the damage was caused by ordinary wear and tear, as opposed to the covered event. *Id.* This is in marked contrast to the case at hand where the insurer admits that the damage was caused entirely by a covered event. That was the situation faced by the court in *Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679 (Tex. App. 1996). There, the question was whether a plumbing leak or another event caused or did not cause damage to the foundation. The court found that the appraisal section did not authorize the appraisers to make that type of causation determination. *Id.* at 683. In the case-at-bar it is undisputed that the electrical surge was the sole cause of damage to the Coates' home. The only question that remains is the extent of what must be replaced or the character of work that must be performed to adequately repair the damage.

This exact question was addressed by the Texas Supreme Court in *State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2009). In *Johnson*, a hail storm damaged the policy holder's roof. A dispute arose as to whether appraisal was appropriate to determine which portions of the roof needed to be replaced under the policy. *Id.* at 887. The Supreme Court of Texas held that appraisal was the appropriate process not only for determining which portions of the roof were damaged, but also *whether undamaged portions of the roof would need to be replaced in order to fix the damage caused by the event. Id.* at 891. The court noted that "causation relates to both liability and damages because it is the connection between them." *Id.* at 891-92. It distinguished *Wells* stating that, in that case, different causes, a plumbing leak (a covered peril) and settling of the foundation (an excluded peril), were questions of causation for liability purposes and thus for the court, as opposed to the extent of damage caused by a covered event, which question was appropriate for the appraisal process. *Id.* at 892. The court held that appraisers must necessarily account for causation in determining "amount of loss." *Id.* at 893.

In addition to causation, Erie argues that the case at hand deals with a question of coverage and, for that reason, appraisal is inappropriate. Erie relies on a number of cases for its proposition that questions of coverage are not suitable for appraisal. The United States District Court for Eastern District of Virginia examined appraisal in *HHC Associates v. Assurance Co. of Am.*, 256 F. Supp. 2d 505 (E.D. Va. 2003). The court held that appraisal is triggered only when parties disagree as to the amount of loss, not the existence of coverage. See also *Kawa v. Nationwide Mutual Fire Ins. Co.*, 174 Misc. 2d 407, 664 N.Y.S. 2d 430 (1997). While it seems certain that questions of coverage are reserved for the courts, the situation here is more analogous to the facts in *Johnson* and this Court declines to adopt the characterization of facts proposed by Erie. The determination whether a covered loss necessitates replacement of undamaged portions of a roof is of a substantially similar character to whether undamaged walls must be replaced in order to adequately fix an electrical system and return the premises to the pre-damaged condition.

This finding is further supported by the reasoning in *Florida Farm Bureau Casualty Ins. Co. v Sheaffer*, 687 So. 2d 1331 (Fla. App. 1997). In *Sheaffer*, the Court of Appeal of Florida held that, "[w]here the amount owed on a claim, arguably within the policy coverage, is dependent on the resolution of disputed issues of fact and the application of policy language to those facts . . . the extent of the claim does not constitute a 'coverage' question" and is therefore appropriate for appraisal. *Id.* at 1334 (citations omitted). The Court went on to state that "the insurance company conceded . . . that the damage to . . . the Sheaffers' home is a covered claim. Thus, the only dispute

that can remain in the instant case is the scope of the required repair or replacement and the amount of loss." *Id.* at 1334. While not the bright line test suggested by the Plaintiffs, this analysis is instructive.

This Court finds the reasoning of *Johnson* and *Sheaffer* persuasive. I find the question of what must be replaced in order to adequately repair the damage caused by the admittedly covered Event in this case is not a question of coverage. Rather, it is a question of the extent or "amount of loss," and is therefore appropriate for appraisal.

Erie argues in its Reply Brief that the extent of repair required in this case hinges on the Law and Ordinance section of the policy and that a court is the appropriate forum for interpreting that section. While that section could have application to the case-at-bar, the facts necessary for consideration of this question are not before the Court and thus not an appropriate area for summary judgment. Further, the application of the section is not essential to a decision on the cross-motions. The Court therefore will restrict the ruling to the stipulated facts and declines to interpret the Law and Ordinance section of the policy at this time.

## Conclusion

For the reasons stated above, the Plaintiffs' Motion for Summary Judgment is granted and the Defendants' Motion for Summary Judgment is denied. In so doing, the Court grants Declaratory Judgment requiring the Defendants to participate in the Appraisal process in accordance with the policy.