The **TRAVELERS INDEMNITY COMPANY OF AMERICA, Plaintiff/Counterclaim Defendant,**

v.

**BONBECK PARKER, LLC; and BonBeck HL, LLC, Defendants/Counterclaim Plaintiffs.**

Civil Action No. 1:14–cv–02059–RM–MJW

United States District Court, D. Colorado.

Signed 10/24/2016

---

**3.** Additionally, ONDA is entitled to $39.92 in costs, which the BLM does not dispute.

Allison L. Gambill, Snell & Wilmer, LLP, Amy M. Samberg, Thomas Henry Blomstrom, Foran Glennon Palandech Ponzi & Rudloff, PC, Denver, CO, Brian Edward Devilling, Matthew Scott Ponzi, Foran Glennon Palandech Ponzi & Rudloff, PC, Chicago, IL, for Plaintiff/Counterclaim Defendant.

David John Pettinato, William Corretti Harris, Merlin Law Group, P.A., Tampa, FL, for Defendants/Counterclaim Plaintiffs.

## ORDER

RAYMOND P. MOORE, United States District Judge

Defendants/Counterclaim Plaintiffs, BonBeck Parker LLC and BonBeck HL LLC, ("Defendants") filed their Motion for Partial Summary Judgment Re: Count II and Counterclaim IV, Motion to Stay and Motion to Compel Appraisal. (ECF No. 31.) Plaintiff The Travelers Indemnity Company of America ("Plaintiff") filed its Cross–Motion for Partial Summary Judgment on the same claims. (ECF No. 41.) Each party has filed a response and reply to the other's Motion (ECF Nos. 44; 52; 53; 55).[1] On February 20, 2015, Magistrate Judge Michael J. Watanabe granted a stay of all proceedings pending the Court's ruling on the parties' motions for partial sum-

---

1. Additionally, the parties filed many supplemental authorities. (ECF Nos. 57; 59; 68; 70; 71; 72; 73; 74; 75; 77; 79; 80; 82). The Court takes notice of these authorities.

mary judgment. (ECF No. 50.) On September 13, 2016, Defendants filed a Motion for Status Conference (ECF No. 81) to address the pending motions.

For the reasons stated below, the Court GRANTS Defendants' Motion for Partial Summary Judgment (ECF No. 31), and DENIES Plaintiff's Cross–Motion for Partial Summary Judgment regarding its request for appraisal directives (ECF No. 41). And in light of this ruling, the Court DENIES Defendants' Motion for Status Conference (ECF No. 81).

## I. BACKGROUND

From June 30, 2011 to June 30, 2012, Defendants had insurance coverage ("the Policy") from Plaintiff on three buildings. (ECF Nos. 14–1; 56 at ¶1.) Defendants sought coverage for alleged hail damage to all three buildings from a hail storm that occurred on June 6, 2012. (ECF Nos. 14, at ¶5; 56 at ¶6.) After inspecting Defendants' properties, Plaintiff found some hail damage to air conditioning units, soft metal components, and overhangs of each building. (ECF No. 55 at 3.) However, Plaintiff denied coverage for Defendants' claim as to the roof of each building, citing exclusions for wear and tear, deterioration, improper installation and shrinkage. (ECF No. 56 at ¶23.)

On June 30, 2014, Defendants demanded an appraisal on the amount of loss. (ECF Nos. 45–14; 45–15.) Plaintiff

agreed to appraisal, not on "[a]ll areas of the claim" as Defendants wanted, but proposed a bifurcated approach to the appraisal.[2] The parties agree that the relevant insurance Policy contains the following Appraisal Provision:

## E. PROPERTY LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

\* \* \*

### 2. Appraisal

If we and you disagree on the value of the property, the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense or the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally. If there is an appraisal, we will still retain our right to deny the claim.

---

**2.** Plaintiff's bifurcated approach proposed:
"- Each appraiser will make separate itemized determinations of (1) the actual cash value and replacement cost of the disputed damages; and (2) the actual cash value and replacement cost of the undisputed damages.
- If the appraisers do not agree on the actual cash value and/or replacement cost with respect to each determination, they will submit the items in dispute to an umpire according to the terms of the Policy.

- The umpire will then make a separate itemized determination of (1) the actual cash value and replacement cost of the disputed damages; and (2) the actual cash value and replacement cost of the undisputed damages.
- All coverage defenses to the disputed damages are reserved for future resolution, and no waiver or estoppel will be implied from this agreement."
(ECF Nos. 41 at 6; 43–7; 45–15; 56 at ¶28.)

(ECF Nos. 1 at 4–5; 31–1; 56 at ¶31.) The parties disagree, however, over the scope of the appraisal under the Appraisal Provision. (ECF No. 45–15.) Plaintiff contends that a literal reading of the words "amount of loss" limits the appraiser's authority to determine only the *amount* of Defendants' claimed damage, not the causation of Defendants' claimed damage. (ECF No. 41 at 1–3.) Defendants, however, argue that the words "amount of loss" in the Appraisal Provision necessarily includes the issue of causation, which includes whether the storm caused damage to the roof of each building. (ECF No. 31 at 3, 18–19.)

On July 24, 2014, Plaintiff sued for declaratory judgment on the coverage of the roof damage and the scope of appraisal. (ECF No. 1.) On September 30, 2014, Defendants, aside from seeking appraisal, counterclaimed for breach of contract, unreasonable delay and denial of payment of covered benefits, and bad faith breach of the insurance contract. (ECF No. 14.) The claims at issue in the pending motions are Claim II on declaratory relief as to scope/ stay of appraisal and Counterclaim IV on declaratory relief to compel appraisal.

## II. DISCUSSION

■■■ The Court's jurisdiction in this matter is founded on diversity of citizenship. 28 U.S.C. § 1332(a). Therefore, the Court applies the substantive law of Colorado. *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995). Under Colorado law, questions of coverage under an insurance policy are generally matters of law reserved for the court. *See Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998). The policy must be enforced as written unless the policy contains an ambiguity. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). The policy should be construed to give effect to the intent of the parties. *Id.* "Whenever possible this intent should be ascertained from the plain language of the policy alone." *Farmers Ins. Exch. v. Anderson*, 260 P.3d 68, 72 (Colo. App. 2010). "[W]ords should be given their plain meaning according to common usage, and strained constructions should be avoided." *Compton v. State Farm Mut. Auto. Ins. Co.*, 870 P.2d 545, 547 (Colo. App. 1993).

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Henderson v. Inter–Chem. Coal Co., Inc.*, 41 F.3d 567, 569–70 (10th Cir. 1994). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion. . . ." *Robertson v. Bd. of Cty. Comm'rs of the Cty. of Morgan*, 78 F.Supp.2d 1142, 1146 (D. Colo. 1999). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one—sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial. *See 1–800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.

*Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).

## A. Whether Appraisers May Determine the Issue of Causation

■ The issue here is whether, under Colorado law, an appraisal of "amount of loss" in the Appraisal Provision allows appraisers to determine the issue of causation. (ECF Nos. 31 at 18; 41 at 1; 45–15.)[3] Plaintiff argues a literal reading of the phrase "amount of loss" would limit the appraiser's authority to determine only the *amount* of Plaintiff's claimed damages (ECF No. 41 at 1–3), whereas Defendants argue that the phrase "amount of loss" includes the issue of causation (ECF No. 31 at 3, 18–19).

As of this date, apparently no Colorado appellate court has addressed this question. The parties cited none and the Court's independent research revealed none. Nonetheless, at least three Colorado trial courts have held that appraisals may determine causation. *See Axis Surplus Ins. Co. v. City Center West LP*, No. 2015 CV 30453, 2016 WL 3254368, at *2 (Weld Cnty., Colo. Dist. Ct. Feb. 19, 2016);[4] *Ik-*

*eako v. Fire Ins. Exch.*, No. 12CV2127 [Order Re: Pl.'s Mot. to Compel Appraisal et al., Doc. # 7–10] (Arapahoe Cnty., Colo. Dist. Ct. Apr. 19, 2013) (ECF No. 31–3; *Rooftop Roofing, Inc. v. Fire Ins. Exch.*, No. 10CV243 [Order Re: Pl.'s Mot. to Compel Appraisal/Arbitration, Doc. # 7–9] (Elbert Cnty., Colo. Dist. Ct. Apr. 8, 2011) (ECF No. 31–2). In addition, several courts in this district, including this Court,[5] have decided the issue.

The first is *Auto–Owners Ins. Co. v. Summit Park Townhome Ass'n* [hereinafter *Auto–Owners*],[6] which held that appraisers, under Colorado law, can determine issues of causation. 100 F.Supp.3d 1099, 1102 (D. Colo. 2015). In holding so, *Auto–Owners* cited four reasons. First, "while the policy does not define the term, the plain meaning of 'amount of loss' incorporates the concept of causation," *id.* and Judge Babcock cited to *CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F.Supp.2d 259, 264 (D. Del. 2000) (quoting *Black's Law Dictionary*'s definition of "amount of loss" as "the diminution, destruction, or defeat of the value of, or of the charge upon, the insured subject to the assured, by *the direct consequence of the operation of the risk insured against*, according to its value in the policy, or in contribution for loss, so far as its value is

---

**3.** Defendants concede that "[i]n Colorado … the appraisal panel … does not determine liability issues, which are uniformly reserved to the courts" (ECF No. 31 at 18). The Court construes Defendant's concession to "liability issues" to mean "coverage issues." Accordingly, whether "amount of loss" includes coverage is not an issue that needs to be addressed.

**4.** Note that *Axis Surplus* cites and follows *Auto–Owners*. *See* 2016 WL 3254368, at *2.

**5.** In *Royal Publ'ns, Inc. v. The Travelers Indemnity Co.*, No. 15–cv–02719–RM, 2016 WL 7732999 (D. Colo. October 13, 2016), a case

involving the same issue arising from the dispute over the phrase "amount of loss" in the same Appraisal Provision as this case, this Court granted the plaintiff's request to compel appraisal and denied the defendant's request for appraisal directives. Along the same vein, this Court sees no reason to deviate from that ruling in interpreting the phrase "amount of loss."

**6.** The Court recognizes that *Auto–Owners* is on appeal to the Tenth Circuit, *see Auto–Owners v. Summit Park*, No. 16–1352, *filed on* September 1, 2016, but this does not affect the Court's analysis.

covered by the insurance." BLACK'S LAW DICTIONARY 83 (6th ed. 1990) (emphasis in original)). Second, "interpretation of a policy provision 'requires consideration of the purpose of the provision.' A purpose of appraisal provisions is to avoid litigation and encourage settlement." *Id.* at 1103 (internal citations omitted). Third, Judge Babcock concluded that "Colorado public policy cautions against an overly restrictive reading of the appraisal provision." *Id.* And fourth, "the appraisers will not be making, and will not preclude the Court from making, coverage determinations. The parties may still dispute coverage issues after the appraisal process has been completed. " *Id.* (internal citations omitted).

Decisions in this district have generally followed *Auto–Owners'* causation holding. *See Copper Oaks Master Home Owners Ass'n v. Am. Family Mut. Ins. Co.,* No. 15–cv–01828–MSK–MJW, Dkt No. 40 (D. Colo. Dec. 1, 2015) (Watanabe, Mag. J.) (following *Auto–Owners* ); *Colo. Hosp. Servs., Inc. v Owners Ins. Co.,* Case No. 14–cv–01859–RBJ, Dkt. No. 53 (June 23, 2015) (holding that "the appraisal is binding with respect to the amount of the loss and the cause of that loss (including the date of the loss and the type of peril), but that the insurer retains the right to deny that the loss is covered by the policy."); *Laredo Landing Owners Ass'n, Inc. v. Sequoia Ins. Co.,* No. 14–CV–01454–RM–KMT, 2015 WL 3619205, at *2 (D. Colo. June 10, 2015) (Tafoya, Mag. J.) ("[A]ppraisal process will likely result in a binding determination as to the amount of loss—including any issues as to causation."); *Nationwide Mut. Ins. Co. v. Holly Ridge Dev. Ass'n,* No. 14–cv–02338–RPM, Dkt Nos. 22 & 28 (D. Colo. February 2, 2015) (Matsch, J.) (ordering that appraisal "is a determination of the amount of the loss caused by the hail storm"). *But see* Hearing Transcript, *Northglenn Inc. v.*

*Travelers Prop. & Casualty Co. Am.,* Case No. 1:13–cv–01904–RPM, ECF No. 28 (D. Colo. June 16, 2015) (Matsch, J.) (finding causation reserved for jury at trial and that "appraisal determines the cost, but not whether that was caused by the storm.").

In terms of other states, many appear to have "allow[ed] appraisers at least some discretion to consider causation." Timothy Gray et al., *An Overview of Property Insurance Appraisal,* at 6, 9–11, ABA TORT TRIAL & INS. PRAC. SEC. (CLE Meeting Spring 2014) (listing Texas, Louisiana, Florida, Minnesota); *see also North Glenn Homeowners Ass'n v. State Farm Fire & Cas. Co.,* 854 N.W.2d 67, 71 (Iowa App. 2014) ("Causation is an integral part of the definition of loss, without consideration of which the appraisers cannot perform their assigned function."); *Hahn v. Allstate Ins. Co.,* 15 A.3d 1026, 1030 (R.I. 2011) ("[C]ausation and amount of loss are 'so inextricably intertwined.' " (internal citation omitted)); *Coates v. Erie Ins. Exch.,* 79 Va. Cir. 440, 445 (2009) ("[T]he question of what must be replaced in order to adequately repair the damage caused by the admittedly covered Event in this case ... is a question of the extent or 'amount of loss,' and is therefore appropriate for appraisal.").

After an analysis of the various cases, the Court—again (*see* discussion in FN 5)—finds *Auto–Owners'* reasoning persuasive and agrees with its holding. First, Plaintiff's policy, like the policy in *Auto–Owners,* appears to not define "amount of loss." Although the Appraisal Provisions in the two policies differ slightly in their language, the disputed phrase "amount of loss" in the Appraisal Provisions is still the same. (*Compare* ECF Nos. 31–1; 56 at ¶31, *with Auto–Owners,* No. 14–cv–03417–LTB, ECF No. 7–3 at 3 (D. Colo. Feb. 23, 2015)). Second, this Court agrees that in

interpreting a policy provision, it should consider the purpose of the provision; here, the purpose is to avoid litigation and encourage settlement of the parties' dispute. *Auto–Owners*, 100 F.Supp.3d at 1102. Third, Plaintiff's Appraisal Provision, at the end, includes: "If there is an appraisal, we will still retain our right to deny the claim." (ECF Nos. 31–1; 56 at ¶31.) This provision allows Plaintiff to dispute coverage issues after the appraisal process has been completed. *See Auto–Owners*, 100 F.Supp.3d at 1103. Accordingly, the Court holds that appraisers may determine the issue of causation.[7]

Because the parties clearly disagreed over the "amount of loss" on Defendants' properties, their disagreement meets the condition to invoke the Appraisal Provision. Defendants have demanded an appraisal. (ECF Nos. 45–14; 45–15.) As such, the Court grants Defendants' request to compel appraisal.

## B. Whether to Grant Appraisal Directives

 In its Cross–Motion for Summary Judgment, Plaintiff requests that, in the event the Court orders appraisal, the appraisal be made under its proposed bifurcated method, *i.e.*, to determine the value of both disputed and undisputed loss *separately*. (*See* FN 2; ECF Nos. 41 at 6–7; 43–7; 45–15; 56 at ¶28.) Plaintiff cited one N.D. Iowa and two D. Arizona decisions that endorsed this bifurcated approach (ECF No. 41 at 6–7), which the Court finds unpersuasive.

**7.** Further, Defendants argue that Colorado's arbitration law applies to appraisal (ECF No. 31 at 7–8), but Plaintiff disagrees (ECF 55 at 2, 8–10). Defendants concede that Colorado appellate courts have not decided whether the Colorado Uniform Arbitration Act applies to appraisal provisions in insurance contracts.

Instead, the Court—again (*see* discussion in FN 5)—agrees with Magistrate Judge Kathleen M. Tafoya who previously "decline[d] to issue any directives to the appraisers and umpire." *El Toledo, LLC v. Sequoia Ins. Co.*, No. 14–CV–01696–RM–KMT, 2015 WL 3457475, at *2 (D. Colo. May 29, 2015). Judge Tafoya reasoned:

First, the policy itself does not contemplate any such directives by the court. Instead, the only court involvement contemplated by the policy is for the selection of an umpire in the event the appraisers cannot reach an agreement. Second, the court is not convinced that it has the authority to issue any orders or directives to the appraisers and umpire as they are not parties to this action Third, in light of the contemplated roles of the appraisers and umpire, ... [t]he appraisers and the umpire are not simply tasked with an accounting of damage to the property; they are also authorized to resolve issues of causation. To the extent that the appraisers might disagree as to whether certain damage was actually caused by [ ] storm, the umpire is responsible for impartially resolving such disputes. The court has no doubt that both the appraisers and the umpire can fulfill these roles without explicit directions from the court

Fourth, ... *AutoOwners* [ ] does not include any affirmative directives from the court to the appraisers and umpire regarding the appraisal process.... [I]t is incumbent on the parties, rather than the court, to ensure that the appraisal proceeds in a thorough, fair, and impartial manner.

(ECF No. 31 at 7). Because whether appraisers may determine the issue of causation can be solved without deciding whether Colorado arbitration law applies to an appraisal, the Court needs not, and thus declines to, decide the arbitration issue at this time.

*Id.* (internal citation omitted.) Accordingly, the Court DENIES Plaintiff's request to issue appraisal directives.

## III. CONCLUSION

Based on the foregoing, the Court:

(1) GRANTS Defendants' Motion for Partial Summary Judgment (ECF No. 31);

(2) DENIES Plaintiff's Cross–Motion for Partial Summary Judgment regarding its request for appraisal directives (ECF No. 41);

(3) ORDERS the parties to proceed with appraisal in accordance with this Order;

(4) DENIES Defendants' Motion for Status Conference (ECF No. 81);

(5) ORDERS that further proceedings in this matter, excepting only the parties' obligations with respect to Magistrate Judge Watanabe's February 20, 2015 Order (ECF No. 50), be STAYED until completion of the appraisal process; and

(6) DIRECTS the parties to file a joint status report on or before 30 days after all appraisal proceedings are completed.